MARION SHARP, APPELLANT, v. PRODUCERS PRODUCE COMPANY, RESPONDENT.

Springfield Court of Appeals. February 4, 1932.

*Neale, Newman & Turner* and *Sizer, Gardner & Lockmiller* for appellants.

*Allen & Allen, Mosman, Rogers & Buzard* and *Louis W. Wolf* for respondents.

BAILEY, J.—Plaintiff brought a common law action for damages for loss of services, companionship, etc., of his wife, Fay Sharp, resulting from injuries sustained by her while employed in defendant's packing plant at Springfield, Missouri. Plaintiff's wife, as employee, received compensation from defendant, as employer, under the provisions of the Workmen's Compensation Law of Missouri.

The petition charged the injury to plaintiff's wife resulted from defendant's negligence and that her injuries have permanently incapacitated her, for which plaintiff prayed damages. The answer

set up, among other things, that the Workmen's Compensation Act fully governed and controlled the rights of all the parties; that defendant fully discharged its obligation to the said Fay Sharp, in accordance with said act, and has been fully and finally released from all and every kind of compensation because of the injury to the said Fay Sharp and that plaintiff's rights in the premises were fully and finally satisfied by reason of the payment of compensation to her.

The trial court sustained defendant's motion for judgment on the pleadings and plaintiff has appealed.

The sole question on this appeal is whether or not the husband's common law right to recover damages for loss of the services and consortium of his wife, resulting from defendant's negligence, is lost by reason of her having received compensation under the Workmen's Compensation Law of this State. It must be conceded that unless the compensation act has taken away the husband's common law rights in that particular, the husband would be entitled to maintain this action. The leading case on that general subject is King v. Vicoloid, 106 N. E. (Mass.) 968. That was a suit in which the parent sued for loss of services of a minor son, an employee who had received compensation under the Massachusetts Workmen's Compensation Act. Under the provisions of the Massachusetts' Act, the employee waived his right of action for damages, but no right of the parent was mentioned in the act. The court, in passing upon the right of a parent to sue, uses this language: ''In our statute there is no direct enactment taking away the parents' right of action, and we find nothing which takes it away by implication. The Legislature simply have not covered the case, as in Parsons v. Merrill, 5 Mets 356. If they had chosen not to leave the parents' right of action unaffected, they might have taken it away altogether; they might have made some stated division of the allowed compensation between the minor employee and his parent; they might have provided (like the Rhode Island Leg.) that the election between the statutory remedy and that given by the common law should be made by the parent of a minor employe and should bind both parent and child. But we have no right to conjecture what the Legislature would have enacted if they had foreseen the occurrence of a case like this; much less can we read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.'' [l. c. 989.]

The King case has been followed in Allen v. Trester, 199 N. W. 841; Silurian Oil Co. v. White, 252 S. W. (Tex.) 569; Roxanna Petroleum Co. v. Cope, 269 Pac. 1084. These cases all involve the right of a parent to sue for loss of services of a minor son, but the principle involved is, we think, analogous to the right of the husband to recover for loss of the services and consortium of his wife. In none of these

cases, however, was there a statute similar to our own particular statute. The section relevant reads, in part, as follows:

"If both employer and employee have elected to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The rights and remedies herein granted to an employee, shall exclude all other rights and remedies of such employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter." [Sec. 3301, R. S. 1929.]

The first sentence of the foregoing statute has been referred to in the briefs as the "release clause;" the first portion of the second sentence as the "exclusion clause;" and the last clause of the second sentence as the "exception clause." For convenience we have adopted the same nomenclature.

It is virtually conceded by plaintiff that, if the Legislature had said no more than is contained in the release clause, all persons, including a husband, would have been foreclosed as to any common law right or remedy by virtue of the provisions of the act. The language is clear and unambiguous and the release clause certainly could have no other meaning. The act then proceeds with the so-called exclusion clause which obviously is not inconsistent with the preceding release clause, although more specific. By its terms it excludes any right or remedy that might have been available to the employee, her husband, as well as other persons, arising out of the common law or otherwise on account of the accidental injury or death of the employee. Certainly if the Legislature had stopped there the husband's common law right to recover for loss of services and consortium of his wife would have been lost. But the statute continues, "except such rights and remedies as are not provided for by this act." This exception clause is relied upon by plaintiff as saving his common law rights as a husband, for the reason, it is argued, that the husband's right to recover for loss of services and consortium of his wife is "not provided for" by the Workmen's Compensation Act. The whole case then hinges upon the proper construction to be given this exception clause.

In construing a statute the legislative intent must be kept in mind, if it may be ascertained, and the whole act, or such portions thereof as are in pari materia, should be construed together. [Keeney. v. McVoy, 206 Mo. 42, 103 S. W. 946.] Since the title to an act is essentially a part of the act and is itself a legislative expression of the general scope of the bill, it may be looked to as an aid in arriving

at the intent of the Legislature. [Strottman v. St. Louis, I. M. & So. R. Co., 211 Mo. 227, 109 S. W. 737.]

The title to the Workmen's Compensation Act, as shown on page 490, Laws of 1927, reads in part, as follows: "An Act, to provide a system of workmen's compensation; prescribing the manner of election and rejection of the act and the effect thereof; . . . defining the rights and liabilities of employers and employees electing to accept or reject the act, and of third persons in connection therewith."

It is indicated by the foregoing extract from the title that the Legislature, in enacting a workmen's compensation law, intended not only to define the rights of the employer and employee, but of third persons as well. In attempting to carry out that intent Section 3301 (supra) was written. No other section of the law is applicable. The release clause defines the rights of all persons by the simple process of declaring they have none in the event the employer furnishes compensation. The same is true of the exclusion clause. Both are in harmony with the intent of the Legislature as expressed in the title to the act. But plaintiff argues that the exception clause limits the preceding clauses and preserves the rights of the husband at common law because the common law right of the husband is not "provided for." We do not understand the words "provided for" to mean "compensated for." It is common legal parlance to refer to different parts of a statute as "provisions" thereof. In the title to this act itself, the Legislature uses the words "provide," "defining," "prescribing," "regulating," and "providing for," indiscriminately, thus showing there was no intent to give to the words " provided for" any different meaning from other synonymous words used in the title and in the body of the statute. One definition of the word "provide" as found in Webster's New International Dictionary is "to stipulate." It is in that sense we believe the Legislature used the words "provided for" in the exception clause. It follows that if a right or remedy be completely destroyed by the act, it would be "provided for" or "prescribed" or "defined," as we interpret those words.

The question then arises whether or not the statute covers or provides for the right of the husband to recover at common law for loss of services of his wife, either by destroying it completely or in any degree. It is our opinion the release clause and the exclusion clause were intended to take away this common law right of the husband. If that be true, what meaning is to be given the exception clause? If the exception clause means that the foregoing release and exclusion clause are limited thereby then in so far as the rights of the wife, husband, parents, etc., are concerned the release clause and exclusion clause have no meaning whatsoever. Plaintiff's contention would result in placing the Legislature in the absurd position

of saying in one breath, so to speak, that the husband's sole common law right to recover for loss of services of his wife is destroyed and in the next breath, by said exception, saying we do not intend that this shall include his common law rights. There is only the one common law right of the husband in this respect and the Legislature either destroyed it by the release and exclusion clauses or the language used means nothing. Our Supreme Court has said, ''although it is a rule of construction that all the words used in a statute must be given a meaning and a purpose if it can reasonably be done, yet when the main purpose of the statute appears it must not be defeated in order to give effect to words that seem useless or out of place.'' [In re Ferguson Estate, 206 Mo. 203, 1. c. 207, 104 S. W. 108.] But we do not need to go that far in this case. Recognizing the 'rule that different portions of an act should be harmonized if possible, we think the exception clause referred to other portions of the act which by their terms do not ''provide for'' the ''employee, his wife, her husband, parents, etc.'' Section 5 of the act provides that it shall not apply to employments by the state of farm labor, employment not on the premises of the employer, and certain employments by minor employers. Section 7, makes the act inapplicable to employees whose salaries exceed $3600 per year. There are also provisions excluding employees who have contracted occupational diseases (Sec. 7) or engaged in interstate commerce (Sec. 12). While it may be said the exception clause was unnecessary if intended to apply to the last mentioned provision of the statute, it can readily be understood that the Legislature would insert such a clause in order to harmonize all sections of the act. Whatever actuated the Legislature in making use of this exception clause, we are certain it was not intended thereby to preserve the common law rights of the husband contrary to other express provisions of the act and in opposition to the evident intent of the Legislature as indicated by the title to the act. We subscribe to the view stated in McVoy v. C. & P. Telephone Co., 138 S. E. (W. Va.) 97, wherein the West Virginia Supreme Court in considering the effect of certain exceptions contained in the West Virginia Act. said: ''Our act contains certain exceptions, i. e., it does not apply to certain employments; it does not apply where the employer has elected not to come within the act; it does not apply in case of defendant's willful wrong. These exceptions strengthen the view that it was the intention of the Legislature to provide. aside from the exceptions, a forum where resort may be had to settle all claims growing out of injury or death to employees. Holding these views, we affirm the action of the circuit court in sustaining the demurrer to the declaration and to each count thereof.''

It is our opinion the Workmen's Compensation Act, in making provisions whereby the employer who refuses to accept the provisions

of the act is deprived of the common law defenses of assumed risk, contributory negligence and the fellow servant rule, practically forced the employer to accept the act and in return intended thereby to relieve him from all other liability for any injury compensable under the statute. The provisions of the law under review are susceptible of an interpretation in harmony with this intent of the law, as we understand it, and that is the interpretation we believe should be adopted.

There can be no question as to the power of the Legislature to take away the common law rights and remedies of the husband in regard to his wife's services. The husband has no vested right arising out of a future tort. [DeMay v. Liberty Foundry Co., 37 S. W. (2d) 640; Adams v. Iten Biscuit Co., 63 Okla. 52, 162 Pac. 938.]

It is our opinion the Missouri Compensation Act destroys the right of the husband to maintain this common law action for loss of services of his wife and that the Missouri Act comes within the purview of that class of cases holding that where the act abrogates a common law right by express provision, the right may no longer be enforced. [Swan v. Woolworth Co., 222 N. Y. S. 111; Treat v. Los Angeles Gas & Elec. Corp., 256 Pac. 447; Hilsinger v. Zimmerman Steel Co., 193 Iowa, 708, 187 N. W. 493; Buonfiglio v. Neumann & Co., 107 Atl. 285.]

It follows the judgment of the circuit court should be affirmed. It is so ordered. *Cox, P. J.*, and *Smith, J.*, concur.