61 So.2d 420 (1952)
RIPLEY et al.
v.
EWELL.
Supreme Court of Florida, en Banc.
November 14, 1952.
*421 Ray Selden, Daytona Beach, for appellant.
Hull, Landis, Graham & French and J. Compton French, De Land, for appellee.
TAYLOR, Associate Justice.
Appellant, as plaintiff in the Circuit Court, sued appellee for loss of consortium of her husband who is alleged to have been injured as a result of appellee's negligence. Demurrer to the declaration was sustained.
A decision in this case must turn upon the answer to a single question: May the wife of a man injured, but not killed, by the negligent act of a third person maintain an action against the tort-feasor for her damages flowing from the loss of the consortium of the husband?
Apparently this question has never been presented to this Court, although we frequently have before us cases involving the clearly recognized right of a husband to recover when the situation is reversed.
Appellant frankly admits that at common law the wife could not maintain such an action and that this rule has been followed by most American Courts which have had occasion to consider the problem. A comprehensive discussion of these decisions can be found in the annotation in 23 A.L.R.2d, beginning on page 1378.
It is the statute law of this State that:
"The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state." F.S.A. § 2.01.
We are bound by this Statute. But that does not fully answer the question. We have held that "When the reason for any rule of law ceases, the rule should be discarded." Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480, 481. This is a part of the common law which was adopted by the statute above quoted. If, therefore, the inability of the wife to recover in a case of this kind is due to some reason of the common law which has disappeared, the rule denying her the right to maintain the action may have disappeared with it.
It will also be noted that the statute preserves the common law only in those cases where it is "not inconsistent" with the acts of the Legislature. It is not necessary that a statute be in direct conflict with the common law before the latter may be superseded, inconsistency being sufficient.
We must examine the common law and attempt to determine the reason for, the underlying philosophy supporting, the rule that allowed a recovery by the husband for loss of the wife's consortium and denied the wife a recovery for the loss of the husband's consortium. Strangely enough, the writers on this subject do not seem to be in agreement.
Some take the view that at common law the wife had the lawful right to the consortium of the husband, that an injury to the husband which impaired the capacities of the husband was a violation of the wife's rights, but that because her identity was merged into that of the husband she could not maintain any action for the recovery of the damages to which she was otherwise entitled. They conclude that the only impediment to the maintenance of the action at common law was the wife's inability to sue. We do not find adequate support for this view in the common law.
Others take the view that consortium was at common law considered an incident or component part of the husband's common-law right to the services of the wife and inseparable therefrom. Under this view the wife had no cause of action as distinguished from a lack of remedy due to her incapacity to sue.
A better perspective of the common-law rule can be obtained by recognizing that marriage was only one of several relationships *422 in which one person was regarded as having a special property interest in the services, if not the person, of another. A father has a legal property interest in the services of his child. He still does. A master had a form of legal property interest in the services of his servant. This relationship in its common law form has largely disappeared at the present time. At common law the father or master could recover, in appropriate cases, for injuries to the child or servant resulting in a loss of these services. Frequently recovery was allowed far in excess of the monetary damages; the classic example being the recovery permitted to the father for the seduction of his daughter.
Blackstone, generally considered the most reliable authority on the common law, explains the reason for the rule as applied to these relationships as follows:
"We may observe that in these relative injuries notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relationship itself, or at least the advantage accruing therefrom; while the loss of the inferior by such injuries is totally unregarded. One reason for which may be this; that the inferior has no kind of property in the company, case or assistance of the superior, as the superior is held to have in those of the inferior, and therefore the inferior can suffer no loss or injury". 3 Blackstones Commentaries, 143.
From the present viewpoint we would not hesitate to say that, insofar as measurable pecuniary damages are concerned, a greater loss is sustained by a child whose father is completely incapacitated than is sustained by a father whose child is seriously injured. The child loses far more than the financial assistance which the father might otherwise provide. The companionship, society, love, counsel and all the elements that go to make up the consortium of the marriage relationship except sex relations may be lost to the child. But the common law did not, nor does modern law, give the child, so long as the father survives, any cause of action against the stranger who negligently injures the father.
The underlying process of thinking that evolved the common-law rule seems to be that the law would allow a recovery by one person having a special property interest in the services of another when such other was injured by the wrongful act of a stranger.
Under the common law the husband had many rights with respect to the property, services and person of the wife which would be considered barbaric today. Many, in fact most, of these have been eliminated by the Constitution and various statutes, but it is significant that we must look to the Constitution and statutes for these changes. The Courts have liberally construed statutes relieving the disabilities of coverture, but have consistently recognized that when the common law was adopted as the law of this State it was done with full knowledge that the common law included the disabilities of coverture as they then existed. They thus become a part of the law of this State, subject to change by, but only by, the Legislature department of Government. Many changes have been made in this way.
The same may be said of the common law relative to torts. For example, the common law recognized no cause of action for wrongful death. This and other provisions of the common law found to be inconsistent with our present day conceptions of justice have been done away with or modified by statute.
The subject of women's rights and torts has been so frequently before the Legislature, and the common laws relative thereto have been so frequently modified, that we must assume that those remnants of the common law not changed have met with general approval. We have no more power to remold the recognized and clearly established principles of the common law because we might disagree with them than we have to refuse to apply to the rights of litigants statutes enacted by the Legislature which we might deem unwise.
*423 When the rules of the common law are in doubt, or when a factual situation is presented which is not within the established precedents, we are sometimes called upon to determine what general principles are to be applied, and in doing this we, of necessity, exercise a broad judicial discretion. It is only proper that in such cases we take into account the changes in our social and economic customs and present day conceptions of right and justice. When the common law is clear we have no power to change it.
Our statutes have gone far in relieving the disabilities of coverture but it cannot yet be said that the law places the husband and wife upon an exact parity. The husband is still primarily obligated to support the family. He cannot dispose of his property by will so as to deprive his widow of at least one third of what he owns. He still has the right to establish the family domicile. Our statute giving the wife the right to her own earnings is still limited to earnings "in any employment separate from her husband." F.S.A. § 708.06. A husband may convey his real estate other than his homestead subject only to the wife's inchoate right of dower, but the wife must secure the husband's consent before she conveys hers.
Should we reach the conclusion that husband and wife are now exactly equal in their respective rights, duties and responsibilities we would be confronted with the problem of determining whether the change from the common law has the effect of destroying the reason for allowing the husband to recover or destroying the reason for not allowing the wife to recover. At least one court has taken the first view. Marri v. Stamford Street Railroad Co., 84 Conn. 9, 78 A. 582, 33 L.R.A.,N.S., 1042.
Our conclusion is that the statutes which have been adopted changing the common law in this regard are not inconsistent with the maintenance of the distinction between the relative rights of husband and wife to sue for the loss of consortium. It is significant that our wrongful death statute allows a widow to recover for loss of consortium when the husband is killed, but the Legislature has not seen fit to further relax the common-law rule.
Appellant cites two cases in support of her views. Hitaffer v. Argonne Co., 87 App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, Passalacqua v. Draper, 199 Misc. 827, 104 N.Y.S.2d 973. There is a third decision which supports this view. Hipp v. E.I. Dupont de Nemours and Co., 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873.
The Passalacqua case was decided by an inferior Court, reversed by an intermediate Court, 279 App.Div. 660, 107 N.Y.S.2d 812, and apparently is now pending further appeal.
The Hipp case was disapproved by a later decision of the same Court, Hinnant v. Tidewater Power Co., 189 N.C. 120, 126 S.E. 307, 37 A.L.R. 889.
The Hitaffer case has received broad study. In England it has met with disapproval by a majority of the Court in Best v. Samuel Fox & Co., 2 K.B. 639 (1951).
We have given careful consideration to the able arguments advanced in the Hitaffer case, many of which are founded on sound reasoning and which logically support the conclusion reached if considered as an argument of what the law should be. They might well appeal to the Legislature. But we find them wholly unconvincing when viewed from the only angle from which our jurisdiction permits us to consider them, namely, a determination of what the law of Florida is.
The Court in that case, as did the Courts of New York and North Carolina in the other cases above cited, takes the view that "the injury to the consortium is an injury to a right which is independent of any right in the other spouse and to which the defendant owes an independent duty." [87 App.D.C. 57, 183 F.2d 820.] This is emphasized by the Court pointing out in the Hitaffer case that in its jurisdiction a verdict denying a recovery to the wife but awarding damages to the husband had been sustained. In the Hipp case a suit by the husband had resulted in a judgment against him. This was held not to bar the wife's action. But the doctrine generally approved is that contributory negligence or other defenses available against a wife's claim for personal injuries will bar a husband's *424 action for loss of consortium. See 27 Am.Jur. 108, Annotation 42 L.R.A. 717. This rule appears never to have been questioned in this Court. Certain it is that under our wrongful death statute the surviving spouse cannot recover unless the deceased could have successfully maintained an action. We could not consistently say that the tort which injures the husband is a direct and independent tort against the wife so as to allow a recovery for a partial loss of consortium during the continued life of the husband without holding that a tort which results in a complete loss of consortium by the death of the husband is an independent and direct tort against the wife and permits a recovery even though the husband might be guilty of contributory negligence. But this would defy the statute which limits an action for wrongful death to those cases in which the spouse could have recovered had he survived.
However, the principal reason that prevents us following the Hitaffer case is that, as we understand the language used, the Court in that case admitted that the law as pronounced in all common-law jurisdictions does not recognize a cause of action by a wife to recover for a loss of her husband's consortium but that Court considered the reasons given for this rule of law to be "specious and fallacious", consequently that Court refused to follow the common law. We do not feel that we are that independent of the legislative branch of Government.
The common law has been adopted by legislative act. It has been modified to some extent by legislative acts. If further changes are desirable in the public interest, the changes should come from legislation. This case illustrates the wisdom of such a rule and strict adherence to it. In the first place if a change in this common law is to be made it is a legislative rather than a judicial function to decide whether it is more desirable in the public interest to take away the husband's cause of action for loss of consortium which has existed since the beginning of our jurisprudence or to recognize a similar right in the wife which has never before been considered to exist. In the second place we would be blinding ourselves to known conditions if we did not appreciate the fact that almost daily accidents occur which come within the scope of the questions here presented and that in most cases the parties responsible make settlements with those injured.
If we were to adopt the rule asserted by appellant, all such cases, when the husband was the injured party, and within the statute of limitations, would be reopened and a new claim presented by the wife, and new liabilities imposed upon persons who have already paid once for the result of their negligent acts. While we should not hesitate to declare the law as we find it, even though the unwary who have been ill advised in their action may suffer, we should not by judicial fiat make changes in established law that will injuriously affect many persons who could not possibly foresee or anticipate such action on our part.
The judgment of the Circuit Court is affirmed.
SEBRING, C.J., and THOMAS, HOBSON, MATHEWS and DREW, JJ., concur.
TERRELL, J., dissents.