**Rita NOVAK, Appellant,**

v.

**KANSAS CITY TRANSIT, INC.,**
a Corporation, Respondent.

No. 49233.

Supreme Court of Missouri,
En Banc.
March 11, 1963.

S. David Trusty, William J. Marsh, Francis L. Roach, Kansas City, for appellant. Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

Harold T. VanDyke, Kansas City, for respondent. Linde, Thomson, Vandyke, Fairchild & Langworthy, Kansas City, of counsel.

COIL, Commissioner.

Rita Novak's petition averred that her husband, while a passenger in an automobile, was negligently injured by respondent and as a result she had been deprived of his consortium, including his companionship and conjugal affection, for which she sought $100,000 as damages.

Respondent's motion for summary judgment was sustained on the ground that a wife may not recover for loss of consortium caused by the negligence of a third party, and Mrs. Novak has appealed.

Under the early common law, although a husband was permitted to recover for an impairment or loss of the consortium (including services and society) of his wife, the wife could not recover for the loss of her husband's society, either because she had no such right or because she was denied any remedy for an invasion thereof. See 4 St. Louis U.L.J. 424, 425, 426.

The passage of the Married Women's Act in Missouri (present §§ 451.250–451.300 RSMo 1959 and V.A.M.S.), which changed the status of married women, made it inevitable that the courts would need to decide whether the husband's right of action to recover for loss of consortium had been eliminated by the Act or whether the historical basis for the husband's rights should be ignored and the view adopted that rights which he had always had were now equal rights as between husband and wife and thus should be enjoyed also by the wife.

And so it was that the courts of this state held that the husband's right of action remained even after the Married Women's Act and that he could recover for the loss of his wife's society by reason of injury to her as a result of the third party's negligence, separate and apart from any loss of her services. Furnish v. Missouri Pac. Ry. Co. (1891), 102 Mo. 669, 15 S.W. 315.

And so it was also that this court in Clow v. Chapman (1894), 125 Mo. 101, 28 S.W. 328, 26 L.R.A. 412, was called upon to determine "whether a wife has a corresponding action against third persons for the alienation of the affections of her husband, and depriving her of his society." 28 S.W. 329. The court in the Clow case contrasted the status of a married woman with respect to her personal rights under the common law and under the Married Women's Act as it then existed. It was noted that at common law the legal existence of a wife was suspended or consolidated into that of her husband during marriage and that certain disabilities to the wife followed from that principle of unity. It was pointed out also that Missouri statutes then in existence provided among other things that all rights of action which had grown out of any violation of a wife's personal rights should be her separate property and under her sole control and that she might in her own name institute and maintain an action for the re-

covery of such property with the same force and effect as though she were a femme sole.

Significantly, the court in the Clow case specifically assumed that at common law a wife could not maintain an action against third persons for depriving her of her husband's society *because her legal existence had been merged into that of her husband by the marriage. Based upon that premise* the court decided the exact issue before it in this broad and comprehensive language: "The case then turns upon the effect to be given to these [Married Women's] statutes. They are disabling to a large extent, so far as they apply in terms to the husband, and they are enabling in so far as they apply to the wife. They give her an entirely different standing from that occupied by her at common law. Her position is now more like that of a wife under the civil law. Instead of her legal existence being suspended, as incorporated and consolidated into that of her husband, she is made to stand out in bold relief, with a separate and distinct legal existence as to her property, and also as to her personal rights; and she may enforce all such rights by proceedings in her own name, independently of her husband. She is placed upon an equality with her husband in many, and indeed most, respects. *By force of the marriage contract, husband and wife are each entitled to the society and comfort of the other,—the one to as great an extent as the other. As a wife is now placed on an equality with her husband in respect of her property and personal rights, and as a husband may have his action, as against a third person, for enticing away his wife, the wife has her action against third persons for enticing away her husband.* * * *

"But it is insisted on behalf of the defendant that the statutes of this state, before set out, do not confer upon the wife any new rights; that the personal rights mentioned in these statutes are the personal rights which she had at common law; that disabilities are removed, but no new rights are created, and, as she had no right of action at common law to remedy a wrong like the one in question, she has none under the statute law. *There is, at first blush, some force in the argument, but upon consideration we consider it no more than adhering to a barren technicality.* The statutes, when considered in their full scope and purpose, give the wife a separate legal existence, whereas before her legal existence was considered merged into that of her husband, and for this reason and no other she could not maintain the action. New rights and new obligations necessarily arise from the changed condition, as incidents thereto. When she is given the sole control of her personal property, and the right to recover the same by her own suit, it must follow, as an incident, that she has the right to make contracts in respect of such property, though the statute may not, in terms, give her the right to make contracts in relation thereto. Full dominion over her property carries with it the power to dispose of such property, as a necessary incident. So new personal rights and obligations flow to her because of the fact that she is given a separate and distinct legal existence. * * * The statutes of this state concerning married women are for the most part remedial, and should be construed and administered so as to give effect to their general object and purpose. We see nothing in the argument pressed upon our consideration to modify the result before expressed." (Italics and bracketed insert, present writer's.) Clow v. Chapman, supra, 28 S.W. 330.

We emphasize that the court in Clow held specifically that it was by reason of the marriage contract that the husband and wife were each entitled to the other's society, and that their rights were equal, i. e., each was entitled to the other's society to the same extent as the other, and that because the husband had a right of action against a third person for enticing away his wife, the wife likewise had an action against third persons for enticing away her husband, specifically including the element of the wife's loss of her husband's

society. (28 S.W. 329.) Further, the court rejected the argument that inasmuch as historically the wife had no right or remedy at common law for interference with the marital relation and that, inasmuch as the Married Women's Act did not create or confer upon the wife any new rights but only removed former disabilities, the wife did not accede to a right of action by reason of the Act. Thus, the court in the Clow case said, in effect, that whatever force there is to the "historical basis argument," we shall ignore, for to give it effect would be to adhere "to a barren technicality" (28 S.W. 330); that new personal rights flowed to the wife because she had been given a separate and distinct legal existence and that the right to sue for the enticing away of her husband was hers because of the comprehensive scope and purpose of the Married Women's Act.

Later, in Nichols v. Nichols, 147 Mo. 387, 48 S.W. 947, an alienation of affections case, the court affirmed its holding in Clow and left no doubt as to the meaning thereof by this language at page 951: "By law the wife is entitled to the aid, support, protection, comfort, and *society of her husband, and for the wrongful deprivation thereof by any person, by whatever means* and however her husband's affection may be thereby affected, she has a right of action against such person for so depriving her of these material benefits of the marital relation; * * *." (Italics present writer's.)

■ In December 1918 the court en banc had before it in Bernhardt v. Perry, 276 Mo. 612, 208 S.W. 462, 13 A.L.R. 1320, the question whether a wife could recover for the loss of the consortium of her husband (we use consortium as including "society," which, in turn, includes affection, companionship, and conjugal rights) as a result of an injury to the husband by reason of the negligence of a third party. The court held that a wife could not maintain such an action and affirmed the judgment of the trial court in sustaining defendant's demurrer to the petition. We are of the view that the majority opinion in the Bern-

hardt case is clearly erroneous and manifestly wrong and should no longer be followed.

It was, as disclosed by the majority opinion (two judges dissented), the contention of the plaintiff-appellant in that case that since it had been held in Clow v. Chapman, supra, that the Married Women's Act permitted the wife to recover for the alienation of her husband's affections, it followed that she had a right to maintain an action for the "injury sued for in this case," which included the alleged loss of her husband's care, protection, consideration, aid, and society.

A careful review of the majority opinion in the Bernhardt case discloses that the court assigned two reasons for the result reached: first, that the holding in Clow v. Chapman, supra, that a wife could sue for and recover from a third person for alienation of her husband's affections did not require, as contended by plaintiff, a holding that a wife could recover for loss of her husband's society as a result of a physical injury done her husband due to a third party's negligence; and second, the possibility that if the wife was allowed to maintain such an action she might receive double compensation for the same damages from the same person.

In support of its first reason, the court suggested that there is a "fundamental difference between the rights of a wife growing out of a personal injury to her husband and those growing out of the alienation of his affections. * * * In the former case the injury is physical, or grows out of a physical injury done to the husband" and he can recover damages which are supposed to make him whole and which enable him to support his wife and children, "and to discharge all of his marital and parental duties due them in the same degree that the law imposed those duties upon him previous to the injury, leaving no right of theirs, if any, violated, which has not been fully compensated. Such was the common law; * * *." 208 S.W. 465. As we understand, the court sought to distinguish

the actions on two grounds: first, that the wrong in the alienation case was committed against the wife and not against the husband as in the case of personal injuries sustained by the husband; and, secondly, that alienation of the husband's affections deprived the wife of all her rights of protection, support and society, while, apparently, the negligent injury of her husband might deprive her of only her husband's society.

Now, while the suggested differences between the actions do or could exist, the court does not point out wherein either difference was relevant to or decisive of the question before it. It seems to us that neither suggested difference was or is decisive. It was decided in the Clow case that the injury to the wife by reason of the loss of the society of her husband was a separate and distinct legal wrong; and Clow made it abundantly clear that the right of action the wife had was not because the suit there happened to be for the alienation of her husband's affections or because of the fact that when her husband's affections were alienated, she might sustain a loss in addition to the loss of his society, e. g., the loss of support. The Clow and Nichols cases decided that by virtue of a married woman's changed status and position, her right to the society of her husband was equal to his right to her society, and thus that the wife could recover therefor in those fact situations in which the husband could recover for a similar loss. The majority opinion in the Bernhardt case failed to take into account that the fundamental reason the wife could not recover at common law in an alienation of affections suit or for the loss of her husband's society due to a third party's negligence was on account of *her inferior status*. Once it is conceded, as the Clow case held, that since the Married Women's Act and by reason of the marriage contract the wife has a separate legally protectible right to her husband's society (including his affection and companionship, and her conjugal rights), then, whether the invasion of that right is by the intentional act of a third party concurred in by the husband, as in the

alienation of affections case, or by the negligent act of a third party as in this case, can make no difference. That is because in both cases the wife has sustained separate injury and damage. Indeed, this court recognizes the validity of that proposition by permitting a husband to recover for the loss of his wife's society (whether or not accompanied by a loss of services) as a result of an injury to her due to a third party's negligence. Furnish v. Missouri Pac. Ry. Co., supra.

We are convinced that if the loss of consortium, which includes a spouse's society, which, in turn, encompasses the right to the other's affection and companionship and the conjugal rights of each, is a separate, equal, personal right of each, the husband and wife, as this court has recognized and has held, then there can be no logical or reasonable basis for denying the wife a right to recover where the invasion has been the negligence of another, while granting the corresponding right to the husband, and while permitting the wife to recover in an alienation of affections action even though her only provable damage might be the loss of her husband's society.

The dissenting opinion in Bernhardt v. Perry, supra, 208 S.W. 467, is a convincing answer to defendant's contention in this case, even though it may be that the wife, contrary to the suggestion in the dissent, did not have a right to consortium at common law. See 22 Michigan L.R., p. 1; contra: Eliason v. Draper, 2 Boyce, (Del.) 1, 77 A. 572, 575; Sims v. Sims, 79 N.J.L. 577, 76 A. 1063, 1064, 29 L.R.A.,N.S., 842. But even if so, such does not detract from the force of the dissenting opinion because it is "probably idle to speculate upon anything so metaphysical as a legal right with no effective remedy, when obviously the real difficulty was the inferior position of married women, and the feeling that they had no standing to complain, since they were not entitled to any 'services' of the husband." Prosser on Torts, 2nd Ed., Ch. 22, p. 691.

Equally fallacious is the second reason stated in the Bernhardt opinion, viz., that

to permit the wife to maintain an action such as the present could result in her recovery of double damages. That conclusion fails to take into account the fact that the loss for which the wife is entitled to damages is a separate and distinct personal loss suffered by her, which, under the Married Women's Act, is exclusively hers, and which properly is not includable within the damages the husband should recover for his personal injury. It is true, of course, that when full pecuniary compensation is paid to a husband by reason of injuries he has sustained, a wife shares to some extent in the benefits of that recovery and certainly she should not be permitted to recover any of the same damages the husband has recovered in his action. Such result may be avoided by delineating accurately the items properly includable in the husband's damages and by permitting the wife in her separate action to recover for the loss of only those elements of consortium which, under the facts of a particular case, represent separate and distinct losses to her. As stated in Prosser on Torts, 2d Ed., Ch. 22, p. 704: "There remains of course the important fact that the husband is under the duty to support his wife, so that any compensation for loss of earning power paid to him goes indirectly to benefit her, while the wife is under no such corresponding duty. This must of course be taken into account in any determination of her damages. But such elements of damage as her loss of the husband's society and affection, and in some cases even the expenses to which she has been put in caring for him, remain uncompensated."

The court in Yonner v. Adams, Del.Super., 167 A.2d 717, 728, in discussing the contention that permitting a wife a recovery for loss of consortium could result in the allowance of double damages, said:

"In Nickel v. Hardware Mutual Casualty Co., supra, it is argued that the husband [269 Wis. 647, 70 N.W.2d [205] 208]:

" '* * * is entitled to recover full compensation for all injuries he sustained, including that for being incapacitated, for his inability to care for, protect, and associate with his wife. If she were authorized to recover from the same wrongdoer the damages she has sustained for the same injuries which her husband may recover for and out of which recovery he is presumed to support and care for her, then recovery would be double * * *.'

"To the same effect is Deshotel v. Atchison, Topeka & Santa Fe Ry. Co., supra, wherein it is stated that [50 Cal.2d 664, 328 P.2d [449] 451]:

" 'A judgment obtained by a husband after he is injured by a third person might include compensation for any impairment of his ability to participate in a normal married life, and, if his wife is allowed redress for loss of consortium in a separate action, there would be danger of a double recovery.'

"The difficulty I find with these analyses is their failure to distinguish the injured husband's personal loss from the separate, distinct and legally recognized loss suffered by his wife. Take the case of a husband who suffers an incapacitating injury to his reproductive organs. In his personal injury suit it is clear that his damages are predicated upon *his* physical injury which precludes him from copulation, procreation, and an otherwise full enjoyment of his marital state. However, the wife's loss is just as real as it is distinct. She can no longer enjoy *her* legally sanctioned and morally proper privilege of copulation or procreation, and is otherwise deprived of *her* full enjoyment of her marital state. These are *her* rights, not his."

Prior to the date of the Bernhardt case, two Missouri courts of appeals had denied the right of a wife to recover for loss of the society of her husband due to his negligent injury. Stout v. K. C. Terminal Ry. Co. (1913), 172 Mo.App. 113, 157 S.W. 1019, and Gambino v. Manufacturers' Coal & Coke Co. (1913), 175 Mo.App. 653, 158 S.W. 77. Inasmuch as the majority opinion in the Bernhardt case did not mention those cases, although the dissenting opinion dealt with

them at 208 S.W. 470, and inasmuch as the reasons assigned for the results in those cases have been reviewed herein, we shall not analyze each specifically. Suffice it to say that for the same reasons that Bernhardt v. Perry, supra, should no longer be followed, the opinions in the two courts of appeals cases last above cited should no longer be followed.

Although, as we have stated, it is our conclusion that the majority opinion in Bernhardt v. Perry, supra, is clearly erroneous, it should be noted that at the time of that opinion the jurisdictions which had passed on the question almost unanimously had denied the right of the wife to recover for loss of consortium due to the negligent injury of her husband. It was not until an opinion by the Federal District Court for the District of Columbia in 1950 that any court permitted the recovery by a wife for the loss of consortium of her husband due to an injury to him by reason of the negligence of another.[1] In Hitaffer v. Argonne Co. (Dist. of Col.), 87 U.S.App.D.C. 57, 183

F.2d 811, 23 A.L.R.2d 1366, the court considered the matter as one of first impression and, recognizing the unanimity of authority to the contrary, proceeded to answer logically and convincingly the various reasons which had been asserted by the courts which had considered the question and denied the wife the right of recovery. See the cases cited in Hitaffer at page 812, footnote 5.

Since the Hitaffer decision the question has been considered often. The courts in fifteen jurisdictions have continued to deny the wife the right of recovery for loss of consortium.[2] The opinions in some of the cases in which the right of recovery was denied make it plain and others imply that the respective courts agree with the view that the wife should be permitted to recover but are of the further opinion that the matter is one for the legislature.[3]

Eight jurisdictions[4] including Michigan, Illinois, Iowa, Delaware, Arkansas, South Dakota, District of Columbia, and Georgia have permitted the wife to recover. Two

1. Except in Hipp v. E. I. Dupont De Nemours & Co. (1921), 182 N.C. 9, 108 S.E. 318, which was overruled in Hinnant v. Tide Water Power Co. (1925), 189 N.C. 120, 126 S.E. 307, and in an early Ohio case which was overruled in Smith v. Nicholas Bldg. Co. (1915), 93 Ohio St. 101, 112 N.E. 204, L.R.A.1916E, 700.

2. Jeune v. Del E. Webb Const. Co. (1954), 77 Ariz. 226, 269 P.2d 723; Deshotel v. A. T. & S. F. Ry. Co. (1958), 50 Cal.2d 664, 328 P.2d 449; Franzen v. Zimmerman (1953), 127 Colo. 381, 256 P.2d 897; Ripley v. Ewell (1952), Fla., 61 So.2d 420; Brown v. Kistleman (1912), 177 Ind. 692, 98 N.E. 631, 40 L.R.A.,N.S., 236; Cravens v. Louisville & N. R. Co. (1922), 195 Ky. 257, 242 S.W. 628; Coastal Tank Lines v. Canoles (1955), 207 Md. 37, 113 A.2d 82; Larocca v. American Chain & Cable Co. (1952), 23 N.J.Super. 195, 92 A.2d 811; Kronenbitter v. Washburn Wire Co. (1958), 4 N.Y.2d 524, 176 N.Y.S.2d 354, 151 N.E.2d 898; Smith v. Nicholas Bldg. Co. (1915), 93 Ohio St. 101, 112 N.E. 204, L.R.A.1916E, 700; Howard v. Verdigris Valley Elec. Co-op. (1949), 201 Okl. 504, 207 P.2d 784; Josewski v. Midland Constructors (1953),

D.C.S.D., 117 F.Supp. 681; Garrett v. Reno Oil Co. (1954), Tex.Civ.App., 271 S.W.2d 764; Ash v. S.S. Mullen, Inc. (1953), 43 Wash.2d 345, 261 P.2d 118; Nickel v. Hardware Mut. Cas. Co. (1955), 269 Wis. 647, 70 N.W.2d 205; Page v. Winter (1962), 240 S.C. 516, 126 S.E.2d 570.

3. E.G., Ripley v. Ewell, supra, 61 So.2d 423; Garrett v. Reno Oil Co., supra, 271 S.W.2d 766, 767; Howard v. Verdigris Valley Elec. Co-op. supra, 207 P.2d 788; Page v. Winter, supra, 126 S.E.2d 571.

4. Hitaffer v. Argonne Co. (1950), 183 F.2d 811; Montgomery v. Stephan (1960), 359 Mich. 33, 101 N.W.2d 227; Dini v. Naiditch (1960), 20 Ill.2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184; Acuff v. Schmit (1956), 248 Iowa 272, 78 N.W.2d 480; Missouri-Pac. Trans. Co. v. Miller (1957), 227 Ark. 351, 299 S.W.2d 41; Hoekstra v. Helgeland (1959), 78 S.D. 82, 98 N.W.2d 669; Yonner v. Adams (1961), Del.Super., 167 A.2d 717; Brown v. Georgia-Tennessee Coaches (1953), 88 Ga.App. 519, 77 S.E.2d 24; Walden v. Coleman, (1962), 105 Ga.App. 242, 124 S.E.2d 313.

Federal District Court decisions [5] hold that the highest court of Nebraska and Montana would permit such recovery. All those decisions contain an array of overwhelmingly convincing arguments in support of their conclusions that the wife has the right to recover for loss of consortium due to the negligent injury of her husband. In many of those cases, as well as in many of those holding to the contrary (cited in footnote 2), there were dissenting opinions. It is impractical, with regard for reasonable opinion length, to review the many cases denying and permitting recovery. (See, generally, Annotation in 23 A.L.R.2d 1366.) We point out that in our view the reasons which had been assigned in the prior opinions denying recovery were effectively answered in the Hitaffer case. Those reasons, other than the two heretofore noted, were not asserted by the court in the Bernhardt case as reasons for denying recovery, nor are they urged by respondent. Additional reasons for denying recovery have been assigned in some of the cases subsequent to the Hitaffer case. One of those has been urged by respondent in support of its position and therefore we shall specifically consider it.

Respondent contends that if the wife is to be permitted a recovery (respondent calls it the creation of a cause of action for recovery) for loss of consortium resulting from negligent injury, it is the function of the legislature to provide that right. Respondent's supporting arguments are that inasmuch as many cases must have been settled in reliance upon the opinion in the Bernhardt case, it would be unfair to permit persons who have paid out money in reliance upon that case to be exposed to uncontemplated claims for damages by a wife for the loss of consortium; that an extension of the right to the wife to recover for loss of consortium involves questions of policy and would probably open the door to claims by others bearing a close relationship to the injured party, such as a child or a parent;

and that passing the problem on to the legislature would permit definition of the term "consortium" and allow the legislature to specify the elements of consortium for which damages should be allowed and the manner in which they should be computed. And finally, it is suggested by respondent that certain courts, viz., North Carolina, Connecticut, Massachusetts, and New York, have held that because no action may be maintained by the wife for loss of consortium, none should exist in favor of the husband; and that the "argument that equality of the sexes calls for a change overlooks that the husband's right to damages for loss of consortium is based on outworn theory," and thus, we take it that the respondent means, the legislature might wish to make the rights of the husband and wife equal by denying both the right to recover for loss of consortium.

In the present case, we have for decision only the question whether the wife should be permitted to recover for the loss of consortium of her husband under existing conditions. If she should be so permitted, the fact that to so hold might cause others to *assert* causes of action, e. g., a child or parent, is no reason to deny a wife an existing right of action. Nor does the fact that the legislature in its wisdom may deny the right to recover for loss of consortium to both husband and wife have any apparent bearing upon the question before us.

Respondent's other argument is, in our opinion, more substantial. It is true that the doctrine of *stare decisis* is in a measure based upon public policy. Consequently, a decision of this court should not be lightly overruled, particularly where, as here, the opinion has remained unchanged for many years. In those instances, however, where it appears that an opinion is clearly erroneous and manifestly wrong, the "rule of *stare decisis* is never applied to prevent the repudiation" of such a decision. O'Leary v. Illinois Terminal R. Co.,

5. Cooney v. Moomaw (1953), D.C.Neb., 109 F.Supp. 448; Duffy v. Lipsman-Fulkerson & Co. (1961), D.C.Mont., 200 F. Supp. 71.

Mo. (en banc), 299 S.W.2d 873, 879[1, 2]. It seems to us that less harm would result from overruling the Bernhardt case than from further withholding a wife's right to recover for loss of consortium due to the negligent injury of her husband.

The Supreme Court of Illinois in Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, in an opinion permitting the wife to recover for loss of consortium due to negligent injury of her husband, said at page 892: "We find no wisdom in abdicating to the legislature our essential function of re-evaluating common-law concepts in the light of present day realities. Nor do we find judicial sagacity in continually looking backward and parroting the words and analyses of other courts so as to embalm for posterity the legal concepts of the past."

The all-pervading and overwhelming fact is that the concept of the inferior status of the wife has been totally repudiated and for this court to perpetuate the erroneous denial of a right of a wife based upon that repudiated early common-law concept on the ground that if that manifest wrong is to be righted, it must be so done by the legislature, would be an improper avoidance of our judicial function. "Decisions founded upon the assumption of a bygone inequality were [are] unrelated to present-day realities, and ought not to be permitted to prescribe a rule of life." Cardozo, Growth of The Law, 105, 106.

The judgment is reversed and the case remanded.

## PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court en Banc.

WESTHUES, C. J., and DALTON, HOLLINGSWORTH and HYDE, JJ., concur.

EAGER, J., dissents in separate opinion filed.

STORCKMAN and LEEDY, JJ., dissent and concur in separate dissenting opinion of EAGER, J.

EAGER, Judge (dissenting).

I find myself wholly unable to concur in the principal opinion. That opinion follows an admittedly minority view which originated in 1950, and which, to me, has no such force or logic as to make it at all impelling. The theory was firmly rejected by this Court in Banc in 1918 in Bernhardt v. Perry, 276 Mo. 612, 208 S.W. 462, 13 A.L.R. 1320, and, except for an apparent desire to renovate the law and create new actions, I see nothing to suggest a total turnabout now, or to make such action desirable.

As a practical matter, we know that substantially all such suits by wives would be filed as separate and subsequent suits in which they would hope for greater damages than if joined with the husbands' suits. Further, as a practical matter, it would be virtually impossible to prevent substantial duplication and overlapping of damages in the two suits. The loss of "consortium" has been and is, at best, a vague and nebulous thing; any possible recovery by the wife would be based upon the identical injuries for which the husband had fully recovered. In his suit he would presumably recover not only for his physical injuries and disability, pain, physical and mental suffering, loss of earnings (and consequent loss or lessening of his ability to support the wife), but also for the loss of *his* ability to consort and associate normally with his wife, and all expenses, past, present and future. It has heretofore proved *most* difficult to keep the submission of all these elements reasonably straight, even in *one* case. The majority opinion asserts that the recovery of double damages could be "avoided by delineating accurately the items properly includable in the husband's damages and by permitting the wife in her separate action to recover for the loss of only those elements of consortium which, under the facts of the particular case, represent separate and dis-

tinct losses to her." A reference to some of the items of damages in the petition gives some indication of how unrealistic this statement is. After reciting alleged specific injuries to the husband covering nearly two pages of the transcript, the petition alleges that the plaintiff has been and will be in the future "deprived of the consortium and love and affection and support of her husband"; that "prior to his injury * * * she was entirely dependent upon him for support and the necessities of life"; that her husband has been reduced to "a physical and psychological wreck"; that she has and will "be deprived of normal conjugal affection and of his comfort and society and of his aid and companionship"; and that she will "be required to tend and care for him and to nurse and provide for him and to undertake his share of the management of their family and the upbringing of their children." The judge who is able to avoid double damages by "accurately delineating" the items that the husband has recovered or will recover in another action in another court, and correctly instruct the jury on the items of damages properly recoverable in this particular case will indeed need the wisdom of a Solomon, not to mention the utter confusion of the juries. The reason for these difficulties is that we are dealing mostly with intangibles in the gray areas that are neither black nor white and in which the line of demarcation is largely imaginary and difficult to draw even for the trained legal mind. The difficulty cannot be avoided by passing on to the jury such vague and unfamiliar terms as "consortium", "conjugal rights", and "conjugal affections". While damages in personal injury cases cannot be measured by fixed standards, they should not rest on speculation and conjecture. The policy of the law is to restrict items of damage to those which can be measured rather definitely by a money value rather than to enlarge on them. In so far as we have been able to observe, where the legislature has acted it has not permitted any recovery for loss of services or consortium. Thus, the wrongful death action contemplates pecuniary injury or benefit as the basis of the right of action. Section 537.090, RSMo 1959, V.A.M.S.; Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 954 [6], 145 A.L.R. 1176; Szofran v. Century Electric Co., Mo.App., 255 S.W.2d 443, 450 [10]; Wilt v. Moody, Mo., 254 S.W.2d 15, 19 [5, 6]. The Workmen's Compensation Law, which largely supplanted master and servant negligence cases, provides fixed, pecuniary schedules of recovery. Sections 287.190, 287.200, 287.240, RSMo 1959, V.A.M.S. And if, perchance, the legislature should choose to enact any other compensation law or laws to replace existing tort actions in other fields, it does not appear likely that it would provide damages for loss of consortium or services. The overburdening of our existing personal injury actions with *fringe benefits* might hasten the day when the legislature would so act. Adequate compensation can be obtained within the framework of existing actions. If the right of recovery is extended to the wife in a lawsuit such as this, we can see no reasonable ground for not granting it eventually to children and perhaps parents or others similarly situated.

The Married Women's Act [1] simply gave to a wife a separate legal existence; it gave her the right to sue for and control her real and personal property, to contract with respect thereto, and thus to have a right of action for "violation of her personal rights." Generally, the Act did not *create* new causes or rights of action but merely *released* married women of restrictions which the common law had imposed. It is my view that such a right of action as is here sought is *not* one based upon an injury to the *personal rights* of the wife and that it is not supported by the Married Women's Act. The emancipation of women by the Married Women's Act from the domination and virtual ownership of their husbands,

1. Now Sections 451.250–451.300, RSMo 1959, V.A.M.S.

effectively argues for the abolition of the right of action now existing in the husband, for he no longer *owns* her or her services or her earnings and the idea is somewhat archaic.

Instead of extending the right to recover for consortium, this court should consider limiting or abolishing the right where it exists. We need not consider exhaustively the effect of the Married Women's Act and the trend to the complete emancipation of women both socially and economically, but enough is readily apparent to indicate that the reasons which gave rise to the common-law action no longer exist. For example, this court has decided that the husband's common-law right to damages for loss of his wife's services and consortium resulting from her employer's negligence has been extinguished by the Workmen's Compensation Act where the wife has received compensation. Sections 287.020, 287.090, 287.-110 and 287.120, RSMo 1959, V.A.M.S.; Holder v. Elms Hotel Co., 338 Mo. 857, 92 S.W.2d 620, 622 [3 & 4], 104 A.L.R. 339; Sharp v. Producers' Produce Co., 226 Mo. App. 189, 47 S.W.2d 242, 244 [3, 4]. The Holder case further decides that the destruction of the right of action is not unconstitutional.

It is just as logical to say that the Married Women's Act abolished the husband's right to sue for loss of services and consortium where the wife has sued and recovered compensation in a negligence action for identical or related items of damages. By statute the State of Kansas has expressly provided that the right of action to recover for a wife's loss of ability to perform services *"shall vest solely in her"* and that her recovery, in so far as it is based upon the loss or impairment of her ability to perform services in the household and in discharge of her domestic duties, shall be for the benefit of her husband "so far as he shall be entitled thereto." Kansas, G.S.1949, 23–205; Cornett v. City of Neodesha, 187 Kan. 60, 353 P.2d 975, 977 [2]. It would seem that a married couple could be trusted to recover and share the items of damage in which they have a joint or common interest. Consortium seems to be a relic of the times when only the husband was considered to have any such right and his recovery was for both. To require a court and jury to divide and apportion the right is asking them to do something which is next to impossible and wholly unnecessary, since each spouse may now sue for his or her physical injuries and recover adequate damages in such action. The recent case of Croker v. Consolidated Service Car Co., Mo., 365 S.W.2d 524 (decided February 11, 1963) illustrates the complexities which arise under our Married Women's Act, even as heretofore construed. Our efforts should be devoted to avoiding conflicting and overlapping claims rather than creating more of them.

The alienation of affection cases cited in the majority opinion are of no particular consequence in this case. An alienation of affections case is an intentional and willful tort. Sandler v. Schmidt, Mo., 263 S.W.2d 35, 38 [4]. Such an action is one based upon a *direct* injury to the wife; it is not one tacked on to a right of action resting solely in the husband for his own injuries. Mental distress and anxiety can generally be recovered where the tort is willful and intentional, but not in a simple negligence case unless the person suing has also suffered physical injuries. Then, too, an alienation case does not present the problem of dividing damages for consortium, with the possibility of double recovery.

The opinion in Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, from which the majority opinion quotes an exhortation, actually demonstrates the real lack of reason in permitting any separate action for consortium. As one dissenting judge said (there were three): "It is no more than an historical accident that the husband's common-law action survived the enactment of the Married Women's Act." 170 N.E.2d

loc. cit. 893. If by reason of the Married Women's Act the court has the power to create a cause of action, it must also have the right to require that the injured spouse recover for all the damages resulting from loss of consortium or services, or both. The day is long since past where distinctions could be made on the basis that a woman's place was in the home and only the husband worked elsewhere. Today's husbands help with the housework and wives take employment in business and industry. Every trial lawyer has heard testimony in personal injury suits that the casualty has adversely affected not only the physical vigor of the injured spouse but also his or her mental attitude toward the other spouse and the children. The plaintiff in such an action should be entrusted with the right and duty to recover the joint or indistinguishable items of damage.

We cannot agree with the statement of the majority opinion that Bernhardt v. Perry, 276 Mo. 612, 208 S.W. 462, "is clearly erroneous and manifestly wrong and should no longer be followed." The Bernhardt case, decided in December 1918, appears to have carefully and thoroughly considered the issues and the opinion does not disclose any material matter of law or fact that was overlooked or misinterpreted. The opinion in the present case disagrees with the result and relies strongly upon alienation of affection cases. The same alienation of affection cases were considered and distinguished in the Bernhardt case. There are additional reasons why the alienation cases are distinguishable, some of which have been previously noted. We cannot agree that the Bernhardt decision is wrong, certainly it is not "clearly erroneous and manifestly wrong". The court should proceed with caution and exercise restraint in overruling established cases, and especially in creating new causes of action or items of damage in personal injury suits. In these days of bureaucracy and of determination by administrative procedure, we are treading on dangerous ground. If the courts do not use their powers to simplify and expedite procedures and the disposition of cases, they are inviting the legislative branch to do so. If this court makes any change, it should be by way of extinguishing the husband's action for consortium and loss of services. This would produce equality. The present procedures furnish the means for adequate compensation for injury to either spouse.

The existing rule, that a wife has no right of action for loss of her husband's society, has been recognized throughout the judicial history of Missouri. When questioned in 1918, it was reaffirmed. It has become a matter of *state policy,* and the legislature has never seen fit to intervene. A change in this rule now would inevitably loosen a flood of litigation, and eventually the same rights would undoubtedly be accorded to children, parents, and other relatives. It is not primarily the duty or function of the courts to create new rights of action. They do, in aid of the normal progress of the common law, have the power to recognize the necessity for change and to move with the necessity, but that power is and should be used with great restraint. If such a radical change is to be made as is proposed here, it should be made by the legislature. Thus, if such an action be created, terms and conditions could be laid down which might make it more workable, as for instance, the joining of both causes of action in one suit and more specifically defining the nebulous basis or grounds of recovery. And as already expounded, the legislature might also wish to take a long, hard look at the existing rights of action of husbands for loss of the services, society, aid, comfort and consortium of their wives in the event of negligent injury to the wife.

Upon the final adoption of the majority opinion, at least one result will be certain; the long-suffering Missouri holders of liability insurance policies will pay still more premiums; upon them and upon the already overburdened courts will fall the greatest grief of this fallacious idea.