**ABB, INC., Appellant,**

v.

**SECURITAS SECURITY SERVICES USA, INC., Respondent.**

**No. WD 75228.**

Missouri Court of Appeals, Western District.

Nov. 20, 2012.

Bruce C. Oetter, Dennis E. O'Connell and Thomas C. Walsh, St. Louis, MO, for appellant.

Debbie S. Champion, Kevin P. Schnurbusch and Victor H. Essen II, St. Louis, MO, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

ABB, Inc. ("ABB") appeals from the trial court's entry of partial summary judgment in favor of Securitas Security Services USA, Inc. ("Securitas"). In its judgment, the trial court interpreted a security services agreement between ABB and Securitas and concluded that the agreement required ABB to indemnify Securitas for claims asserted by injured employees and relatives of deceased employees following a workplace shooting. The trial court certified its judgment as final for purposes of appeal pursuant to Rule 74.01(b). We conclude that the judgment did not dispose of a distinct judicial unit and that we thus do not have jurisdiction to entertain this appeal, requiring its dismissal.

**Factual and Procedural Background**

ABB Power T & D Company, Inc. (a predecessor in interest to ABB) entered into a security services agreement ("Agreement") with Burns International Security Services (a predecessor in interest to Securitas) in 1998. The Agreement provided that Securitas would provide ABB with security services. The Agreement set limits on the liability Securitas would face as a result of the provision of its services and required indemnification from ABB in certain instances. The Agreement outlined Securitas's potential liability as follows:

> In no event shall [Securitas] be liable to [ABB] for any Claim other than one which arises during the performance of services under this Agreement and is caused by the negligence of [Securitas], its employees or agents while acting within the scope of their duties and authority. In no event shall [Securitas] be liable for any Claim caused in whole or in part by acts or omissions of [ABB] or third parties or their respective employees or agents, or for consequential or incidental damages or loss of profits.

With respect to indemnification, the Agreement provided:

> [ABB] agrees to indemnify and hold [Securitas] harmless from and against any Claims made by a third party(s), including, but not limited to, injury, death or damage or loss of property, arising from [Securitas] negligent acts or omissions, including those relating to the hiring, training, supervision or retention of Personnel by [Securitas], its agents or employees.

The Agreement did not define "third party."

On January 7, 2010, Securitas provided security services to an ABB plant in St. Louis pursuant to the Agreement. That day, a disgruntled ABB employee wielding a firearm entered the ABB plant. The gunman killed three fellow employees and injured at least five more before taking his own life.

In April 2010, relatives of the deceased employees filed wrongful death lawsuits and several injured employees filed personal injury lawsuits against Securitas ("Employee Lawsuits").[1] ABB was not named as a defendant in the Employee Lawsuits. Securitas made written demand on ABB to defend and indemnify Securitas in the Employee Lawsuits. Securitas alleged in its demand letter that ABB was required by the Agreement to "defend, indemnify and hold [Securitas] and its employees harmless against claims of the type included in the [Employee Lawsuits]." ABB disputed that the claims asserted in the Employee Lawsuits were claims by "third parties" within the scope of the indemnification provision in the Agreement.

ABB filed a declaratory judgment action against Securitas. In its petition, ABB asked the trial court for "[a] declaration that the [Agreement] does not require ABB to defend or indemnify Securitas against or from the claims in the [Employee Lawsuits]." Securitas answered the petition, denying ABB's argued construction of the Agreement.

ABB and Securitas filed cross motions for summary judgment addressing ABB's declaratory judgment action. Each agreed the issue before the court was whether the Agreement required ABB to indemnify Securitas for claims asserted by ABB employees or their families. Each agreed that the construction of the Agreement presented a question of law and that there were no material facts in dispute preventing the entry of summary judgment on that issue. Each asked the trial court to determine whether the Agreement obligated ABB to "defend and indemnify" Securitas against the claims in the Employee Lawsuits.

Before the cross-motions for summary judgment were argued and taken under submission, Securitas sought and was granted leave to file a counterclaim against ABB for breach of contract. Securitas's counterclaim alleged that ABB's refusal to defend and indemnify Securitas in the Employee Lawsuits was a breach of the Agreement and that Securitas had been damaged as it was incurring the cost to defend, and was exposed to pay judgments or settlements of, the Employee Lawsuits.[2] The pending cross motions for summary judgment did not request disposition of the counterclaim for breach of contract.

On February 10, 2012, the trial court granted Securitas's motion for summary judgment and denied ABB's motion for summary judgment ("Judgment"). The trial court entered judgment in favor of Securitas and against ABB on ABB's de-

1. Two Securitas employees, Janisha Johnson and Cordin Hudson, were also named defendants in the Employee Lawsuits. Securitas's demand on ABB to defend and indemnify the claims asserted in the Employee Lawsuits included a demand to defend and indemnify the individual employees. However, the individual employees are not named as parties in the instant case.

2. At oral argument, counsel for ABB correctly characterized the counterclaim as compulsory in nature, a principle equated with claim preclusion. "The compulsory counterclaim is a means of bringing together all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." *Harmon v. Headley*, 95 S.W.3d 154, 157 (Mo.App. W.D.2003) (citations omitted).

claratory judgment claim. The Judgment noted that "Securitas's counterclaim for breach of contract shall continue to pend." ABB thereafter sought and received an order from the trial court designated "Final Judgment" which expressed the trial court's conclusion "that there is no just reason for delay," and declaring the disposition of ABB's declaratory judgment action a final judgment for purposes of appeal pursuant to Rule 74.01(b).

ABB then filed this appeal.

## Jurisdiction

■ Securitas argues that we do not have jurisdiction to hear this appeal because the trial court's Judgment was not eligible for certification as a final appeal pursuant to Rule 74.01(b) as the unresolved counterclaim involves issues that are "inextricably intertwined" with ABB's declaratory judgment action. ABB argues that we have jurisdiction to entertain this appeal because the Judgment disposed of the sole claim raised by ABB.

■ The right to appeal is established by statute. *See* MO. CONST. art. V, section 5. We acquire jurisdiction to entertain an appeal upon the trial court's issuance of a "final judgment." Section 512.020(5); [3] *Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995). "If [a] judgment is not final, we lack authority to consider the case and must dismiss the appeal." *Stewart v. Liberty Mut. Fire Ins. Co.,* 349 S.W.3d 381, 384 (Mo.App. W.D.2011). Generally, a judgment is final if it disposes of all the issues with respect to all parties and leaves nothing for future determination. *Melson v. Traxler,* 356 S.W.3d 264, 268 n. 9 (Mo.App. W.D.2011). Under this standard, there is no dispute that the trial court's Judgment is not "final" as, in light of the unresolved counterclaim asserted by

Securitas, it does not resolve "all of the issues with respect to all parties." *Id.*

■ Rule 74.01(b) provides an exception to the general finality rule, however. It permits a trial court to characterize a judgment as "final" even though it disposes of fewer than all the claims or parties but "only upon an express determination that there is no just reason for delay." Though written to suggest unfettered discretion in the trial court, in fact a trial court's certification "that there is no just reason for delay" is not conclusive. *Lunceford v. Houghtlin,* 326 S.W.3d 53, 61 (Mo.App. W.D.2010). "It is the content, substance, and effect of the order that determines finality and appealability." *Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997).

■ A trial court's designation of a judgment as final under Rule 74.01(b) "is effective only when the order disposes of a distinct 'judicial unit.' " *Id.* Stated differently, even if the circumstances suggest that judicial economy could be promoted by certification of an interlocutory order as final, unless the interlocutory order disposes of a distinct "judicial unit," the order cannot be properly certified as final pursuant to Rule 74.01(b), rendering this court without jurisdiction to entertain an appeal from the order.

The meaning of the phrase "judicial unit" was well articulated by our Supreme Court in *Gibson:*

> The required "judicial unit for an appeal" has a settled meaning: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *State ex rel. State Hwy. Comm'n v. Smith,* 303 S.W.2d 120, 123 (Mo.1957). ***"An order***

---

**3.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

*dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation." Weir v. Brune* [364 Mo. 415], 262 S.W.2d 597, 600 (Mo.1953). It is "differing," "separate," "distinct" transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim. *Id.*

952 S.W.2d at 244 (emphasis added).

■ This definition of "judicial unit" requires that a "trial court's decision . . . dispose of *a minimum of one claim." Bannister v. Pulaski Fin. Corp.*, 255 S.W.3d 538, 541 (Mo.App. E.D.2008) (emphasis added). However, the mere fact that a minimum of one claim has been disposed does not mean a judicial unit has been disposed. A single judicial unit is the compilation of allegations seeking to enforce a single legal right, whether or not asserted in several claims or counts, or as requests for multiple remedies. *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994). Thus, the disposition of a "judicial unit" for purposes of Rule 74.01(b) is not necessarily the same as the disposition of counts or cause of actions. It is instead "the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* (internal quotation marks omitted). "[C]laims are considered separate" such that their pendency will not prevent appeal following certification under Rule 74.01(b) "if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action." *Id.*

In keeping with this accepted view of a distinct "judicial unit," the dismissal of an appeal has been necessitated when some claims or counts asserted by a particular party have been dismissed, but where remaining claims or counts asserted by the same party arise from the same set of facts, and the same transactions and occurrences, as the claim or count appealed. *See Gibson*, 952 S.W.2d at 244–45.

This accepted view of a distinct "judicial unit" has been similarly applied when the claims or counts remaining in a case are cross-claims or counterclaims arising out of the same set of facts, and the same transactions and occurrences, as the dismissed claims or counts appealed. In fact, Rule 74.01(b) expressly anticipates such an outcome, as it provides:

When *more than one claim for relief is presented* in an action, *whether as a claim, counterclaim, cross-claim, or third-party claim* . . . the court may enter a judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay.

(Emphasis added.) Thus, in *Columbia Mutual Insurance Co. v. Epstein*, 200 S.W.3d 547, 549 (Mo.App. E.D.2006), an insurance company filed a petition for declaratory judgment against its insured. The petition asked the trial court to declare that the policy imposed no obligation on the insurance company to defend or indemnify the insured. *Id.* The insured filed a counterclaim seeking damages against the insurance company for vexatious refusal to pay and bad faith. *Id.* Both the insurance company and the insured filed competing motions for summary judgment on the issue of the obligation to defend and indemnify. *Id.* The trial court entered judgment in favor of the insured, holding that the insurance company was obligated under the insur-

ance policy to defend and indemnify, and certified the judgment as final pursuant to Rule 74.01(b). *Id.* The insured's counterclaim for vexatious refusal to pay and bad faith remained pending. *Id.* The Eastern District concluded that the trial court's certification was improper because the judgment did not dispose of a distinct judicial unit. *Id.* at 551. The Eastern District explained:

> Both actions require proof of facts as to the nature of the coverage afforded by the insurance policy to [the insured], and both actions rely on interpretation of the policy language as to such coverage. Thus, [the insurance company's] request for declaratory judgment as to its duty to defend and indemnify is inextricably intertwined with [the insured's] still-pending counterclaim for vexatious refusal to pay and bad faith.

*Id.* The Eastern District observed that both the declaratory judgment action and the counterclaim sought a remedy for the same alleged legal right. *Id.* at 551–52. "[A] judgment that fails to dispose of all remedies asserted as to the same legal rights, leaving some legal rights open for future adjudication, is not a final judgment under Rule 74.01(b)." *Id.* at 550.

Similarly, in *Bannister v. Pulaski Financial Corp.* 255 S.W.3d 538, 540 (Mo. App. E.D.2008), a trial court certified as final its judgment dismissing a buyer at a foreclosure sale from a suit by the former owner of the foreclosed property against the foreclosing bank. Following dismissal of the former owner's claims against the buyer, there remained pending in the case the former owner's claims against the fore-

closing bank, the foreclosing bank's counterclaims against the former owner, the foreclosing bank's cross-claim against the buyer interpleading the excess sale proceeds, and the buyer's claim against the interpleaded funds based on the assertion that the former owner's claims were frivolous. *Id.* Although all claims asserted by the former owner against the buyer were resolved by the trial court's certified judgment, the Eastern District held that a distinct judicial unit had not been disposed of requiring it to dismiss the appeal. *Id.* at 542. The court so held because "[a]ll of [the] remaining claims arise out of the same transaction and require proof of the same set of facts." *Id.* As the court observed, "no party in the instant case has been entirely discharged from the litigation." *Id.*

In yet another example, the Southern District concluded in *Boomerang Transportation, Inc. v. Miracle Recreation Equipment Co.*, 360 S.W.3d 314, 317 (Mo. App. S.D.2012) that a trial court's grant of summary judgment in favor of a defendant which disposed of the plaintiff's breach of contract claim was not properly certified as a final judgment under Rule 74.01(b) because the defendant's counterclaim "[arose] out of the same transactions and occurrences" and with "factual underpinnings [that] are intertwined" remained pending. The Southern District thus concluded that the judgment did not dispose of a single judicial unit. *Id.*[4]

The circumstances presented by the instant case cannot be distinguished from *Epstein, Bannister,* or *Boomerang Trans-*

---

**4.** The Southern District characterized the trial court's decision to certify its judgment under Rule 74.01(b) as legally erroneous because the judgment did not dispose of a judicial unit and also as an abuse of discretion. *Boomerang Transp., Inc.,* 360 S.W.3d at 317. There is authority for reviewing a trial court decision's to certify under Rule 74.01(b) for an abuse of discretion even assuming the certification is otherwise legally appropriate. *See, e.g., Comm. for Educ. Equal.,* 878 S.W.2d at 453; *Bannister,* 255 S.W.3d at 542 n. 2.

*portation, Inc.* Securitas's counterclaim for breach of contract arose from the same contract—the Agreement—as ABB's petition for declaratory judgment. Both actions rely on the interpretation of the Agreement and, in particular, the extent to which the Agreement requires ABB to defend and indemnify Securitas in the Employee Lawsuits. In fact, that is the only legal theory at issue in this case. That legal theory manifests itself in ABB's request for the remedy of a declaration of rights and in Securitas's request for the remedy of damages. Requests for multiple remedies, even if by different parties, based on the same legal theory do not create distinct judicial units. *Comm. for Educ. Equal.*, 878 S.W.2d at 451.

Thus, the sole judicial unit at issue in this case has not been fully disposed as Securitas's counterclaim has not been determined. Even if the Judgment effectively determines the issue of liability on Securitas's counterclaim, the essential element of Securitas's damages has not been determined. *See Clay County ex rel. County Comm'n of Clay v. Harley & Susie Bogue, Inc.*, 988 S.W.2d 102, 109 (Mo.App. W.D. 1999) (holding it improper to certify as final for appeal under Rule 74.01(b) a judgment that determines liability but not damages). It is an inescapable conclusion that Securitas's counterclaim relies on a legal theory that is identical to the legal theory underpinning the parties' competing requests for summary judgment.

It is noteworthy that had Securitas, not ABB, initiated the declaratory judgment action, Securitas would have been required to assert its breach of contract claim as a separate additional count or risk running afoul of the doctrine forbidding splitting causes of action. *See Comm. for Educ. Equal.*, 878 S.W.2d at 451. Had that been our procedural posture, there is no doubt that a grant of summary judgment on

Securitas's claim for declaratory relief would not have permitted certification under Rule 74.01(b) had its breach of contract claim remained pending. *See Gibson*, 952 S.W.2d at 244. We can perceive no reasoned basis to reach a different result merely because Securitas's breach of contract claim remains pending as a counterclaim in a declaratory judgment action initiated by ABB where both claims, regardless by whom asserted, depend on construction of the indemnity provision in the Agreement. The inquiry is not whether all claims asserted by a single party have been disposed, but whether all claims (including counterclaims, cross-claims, or third party claims) associated with a single legal theory—*i.e.*, a distinct judicial unit—have been disposed. Viewed in this fashion, it is easy to see that a distinct judicial unit has not been disposed when both parties involved in the dismissed claim remain in the case and when the claims which remain pending (however procedurally asserted) arise out of the same set of facts, transactions, and occurrences as the dismissed claim.

We thus reject ABB's argument that a "judicial unit" was determined by the trial court's Judgment because ABB's sole and only claim has been disposed. ABB's argument:

> [M]isapprehends the nature of the declaratory judgment act. The declaratory judgment act was designed to provide a preventative *remedy*. It supplements but does not supplant other remedies. "[I]t affects exclusively matters of practice, pleadings, and forms and modes of proceedings; it does not create any new or substantive rights, but is procedural in nature." While the declaratory judgment act is liberally construed to accomplish its preventive purpose, it is but one of several remedies, not a substantive claim.

*Comm. for Educ. Equal.*, 878 S.W.2d at 452 (internal citation omitted). ABB's argument also improvidently conflates the disposition of a "count" or cause of action with the disposition of a distinct legal theory or judicial unit.

We necessarily conclude that we do not have jurisdiction over this appeal. "The purpose and policy behind [Rule 74.01(b)] is to avoid redundant review of multiple appeals based on the same underlying facts and similar legal issues." *Id.* at 451. A later appeal from the disposition of Securitas's pending counterclaim would require us to review the same underlying facts and similar legal issues. Though we are mindful of ABB's argument that "judicial economy" would be furthered by immediate resolution of the parties' dispute about the scope of the indemnity provision, we are not at liberty to ignore our jurisdictional constraints on this basis. Moreover, ABB's argument ignores that if the trial court's construction of the indemnity provision is correct, then conducting two separate appeals to review the meaning of the Agreement separately from the damages awarded will not have fostered judicial economy.

### Conclusion

ABB's appeal is dismissed. This matter is remanded for further proceedings consistent with this opinion.

All concur.