**FIRST COMMUNITY CREDIT UNION, Appellant,**

v.

**Zachary A. LEVISON and Marsha Levison, Respondents.**

No. ED 98352.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 29, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

572

Thomas M. Martin, Joseph E. Bant, Kansas City, MO, for Appellant.

Martin L. Daesch, Lyndon P. Sommer, Jesse B. Rochman, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

First Community Credit Union ("FCCU") appeals from the judgment of the trial court dismissing its Breach of Contract Petition based upon defendant Zachary Levison's Motion to Dismiss for failure to state a claim. We reverse and remand.

## I. BACKGROUND

In April 2008, Zachary Levison ("Respondent") and Marsha Levison (collectively, "the Levisons"), son and mother, applied for and received credit in the amount of $31,066 through First Community Credit Union ("FCCU") in order to purchase a 2008 Dodge Charger ("Vehicle"). Within two years, the Levisons failed to make the required monthly payments on the loan, and FCCU, in March 2010, exercised its rights as a secured creditor[1] and repossessed the Vehicle.

After repossession, FCCU sent separate presale notices to each Levison to advise them of the repossession and their rights and related procedures to regain possession of the Vehicle. Both presale notices were dated March 2, 2010, and were addressed to each Levison, individually, even though they resided at the same address. The Levisons did not satisfy the redemption requirements, and FCCU disposed of the Vehicle at a private sale for $6,200 in May 2010. Following the sale, a deficiency balance remained in excess of $20,000.

Thereafter, on June 30, 2011, FCCU brought a breach of contract action ("Petition") against both Levisons in the circuit court of The City of Saint Louis in order to recover the deficiency balance remaining. Marsha Levison failed to appear or respond to the Petition. Zachary Levison responded to the Petition with an Answer and a Motion to Dismiss. Included in Respondent's Answer was a counterclaim, seeking class action certification for FCCU's unlawful and deceptive pattern of wrongdoing regarding the repossession of collateral (hereinafter, "Respondent's Counterclaim"). In Respondent's Motion to Dismiss, Respondent sought to have FCCU's Petition dismissed, arguing that FCCU failed to state a claim upon which

---

1. Secured creditor or party is defined by Article 9 of the Uniform Commercial Code ("UCC"), which has been adopted by the Missouri Legislature. *See* Sections 400.9–101, *et seq.; see also D.A.N. Joint Venture, III v. Clark,* 218 S.W.3d 455, 458 (Mo.App. W.D. 2006). "The secured party is the person in whose favor the security interest has been created, as determined by reference to the security agreement." *See* Section 400.9–102, cmt. 2.

relief may be granted because FCCU's Notice failed to comply with the content requirements of Section 400.9–614(1).

After hearing arguments, the trial court granted Respondent's Motion to Dismiss, finding that FCCU's Notice failed to comply with the requirements of Section 400.9–614(1). Without ruling on Respondent's Counterclaim, the trial court entered its "Order and Judgment" dismissing FCCU's Petition on April 9, 2012, and under Rule 74.01(b) authorized it as immediately appealable.

FCCU now appeals the trial court's grant of Respondent's Motion to Dismiss. Respondent has filed a motion requesting that this appeal be dismissed for lack of jurisdiction.[2] Thus, before considering the merits of this appeal, we must first determine if this Court has authority to hear this appeal. *Title Partners Agency, LLC v. Dorsey*, 308 S.W.3d 308, 310 (Mo.App. E.D.2010). If this Court lacks authority to entertain this appeal, the appeal must be dismissed. *Id.*

## II. AUTHORITY

Respondent, in his Motion to Dismiss this appeal for lack of authority, contends the trial court's Order and Judgment, dated April 9, 2012, is not final, despite its designation as such, because it did not dispose of one "judicial unit." Specifically, Respondent argues that this Court does not have authority to hear this appeal as the trial court's judgment was not eligible for certification as a final appeal pursuant to Rule 74.01(b) because FCCU's claim against Marsha Levison is still pending in

the trial court and the trial court left unresolved Respondent's Counterclaim.

### Authority Requirements

An appeal may only lie if there is a final judgment. *Coleman v. Coleman*, 187 S.W.3d 331, 333 (Mo.App. E.D.2006); *see also* Section 512.020. If there is no final judgment, an appellate court lacks authority and must dismiss the appeal. *In re Marriage of Werths*, 33 S.W.3d 541, 542 (Mo. banc 2000). "A judgment, order, or decree of the trial court is final and appealable only when it disposes of all the issues for all parties in the case and leaves nothing for future determination." *Haugland v. Parsons*, 827 S.W.2d 285, 286 (Mo. App. E.D.1992); *see also In re Marriage of Werths*, 33 S.W.3d at 542 ("A judgment is final only if it leaves nothing for future determination.").

However, while generally a trial court's disposition must dispose of all claims and parties to be appealable, Rule 74.01(b) "authorizes the trial court to enter an appealable final judgment as to fewer than all claims or parties in the case and to certify that there is no just reason to delay the appeal of that judgment." *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011); *see also Dorsey*, 308 S.W.3d at 310 ("The trial court may certify for appeal a judgment as to fewer than all parties or all claims by expressly designating that 'there is no just reason for delay.' "); *see also* Rule 74.01(b). Nevertheless, while a trial court may designate its judgment final as to a certain claim or claims, this designation is effective only when the order disposes of a distinct "judicial unit." *Gibson*

in Missouri Courts and holding that "jurisdictional" statutes—such as Section 512.020, prescribing the right to appeal—are merely statutory limits on remedies or elements of claims for relief that the courts may grant).

*v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997) ("It is the content, substance, and effect of the order that determines finality and appealability."). A distinct judicial unit is defined as "the final judgment on a claim, and not a ruling on some of several issues arising out of the same *transaction or occurrence* which does not dispose of the claim." *State ex rel. State Hwy. Comm'n v. Smith,* 303 S.W.2d 120, 123 (Mo.1957) (emphasis added). A separate appealable judgment is permitted for "differing, separate, distinct transactions or occurrences ... not differing legal theories or issues presented for recovery on the same claim." *Gibson,* 952 S.W.2d at 244. (internal quotation marks omitted).

■ Furthermore, besides Rule 74.01(b)'s exception to the general rule, the doctrine of "implicit finality" may also permit an appellate court to entertain authority prior to the disposition of all claims and parties by the trial court. The doctrine of implicit finality is "[a] corollary to the general rule of finality [which] allows characterization of a judgment as final where the decision on one claim implicitly disposes of the other claims[.]" *Baumstark v. Jordan,* 540 S.W.2d 611, 612 (Mo.App.1976); *see e.g., Jefferson v. Am. Fin. Group, Inc.,* 163 S.W.3d 485, n. 2 (Mo.App. E.D.2005) ("If a judgment, by implication, necessarily carries with it a finding upon other counts, the judgment will be sustained as final even though the count is not specifically mentioned.").

*Authority Analysis*

Here, the trial court certified its Order and Judgment as immediately appealable under Rule 74.01, by including in its Order and Judgment:

this Court expressly determines that there is no just reason for delaying the entry of this Order and Judgment as a final, appealable Judgment, in that:

a. this judgment fully adjudicates Plaintiff's [FCCU's] claim against Defendant Zachary Levison, and as a practical matter, Marsha Levison as well.

b. this Judgment fully adjudicates the sufficiency of Plaintiff's notice of sale as to both Defendants [the Levisons]; and

c. Defendant's class action Counterclaim is primarily based upon Defendant's allegation that Plaintiff's notice of sale fails to strictly comply with § 400.9–614(1).

Thus, we examine the issues at contention: (1) whether the trial court *actually* disposed of FCCU's claim against Marsha Levison;[3] and (2) whether the final disposition of Respondent's Counterclaim is necessary before this appeal may lie.[4]

### i. The trial court disposed of FCCU's claim against Marsha Levison.

■ First, Respondent argues that the trial court incorrectly and improperly certified its Order and Judgment as immediately appealable under Rule 74.01(b) because it did not dispose of a single judicial unit, in that FCCU's claim against Marsha Levison remains pending in the trial court.

FCCU sought to hold the Levisons jointly and severally liable under the sole count of its Petition. The Petition's claims against Respondent and Marsha Levison were in no way differing, separate or distinct transactions or occur-

---

3. Respondent maintains that FCCU's claim against Marsha Levison remains pending in the trial court, and thus, a single "judicial unit" has not been adjudicated.

4. Respondent argues that his Counterclaim is part of the same "judicial unit" as the claims sought under FCCU's Petition.

rences. Indeed, the reason the claims against both parties are contained in the same count is because the claims arise out of the exact same transaction. Accordingly, we agree with Respondent that in order for there to be an appealable judgment, the trial court was required to dispose of the claims against both Levisons. *See e.g., Beezley v. Nat'l Life & Acc. Ins. Co.,* 464 S.W.2d 535, 536 (Mo. App.1971) ("when a motion to dismiss plaintiffs' petition (formerly a demurrer) is filed by one or more of the defendants and is sustained and judgment entered thereon, but no action is taken regarding the other defendants, an appeal by the plaintiffs at this point is premature and must be dismissed"); *Warmann v. Ebeling,* 625 S.W.2d 691 (Mo.App. E.D.1981) (holding that the plaintiff's appeal must be dismissed because the plaintiff sued three defendants for fraud and the trial court only granted summary judgment for two of the defendants, remaining silent as to the third defendant, thus, the judgment rendered by the trial court did not dispose of all the parties); *Goldstein v. Floridian Homes, Inc.,* 331 S.W.2d 124, 126 (Mo.App.1960) ("an order dismissing a mechanic's lien suit as to one or more defendants, sole or part owners of the property, without disposing of the case as to the remaining defendant or defendants, was not appealable."); *Caulfield v. Farish,* 24 Mo.App. 110, 112 (Mo.App.1887) ("It was error on the part of the trial court to enter what purports to be a final judgment in favor of the defendant ... without disposing of the other defendants."); *Sater v. Hunt,* 61 Mo.App. 228 (Mo.App.1895); *Rock Island Implement Co. v. Marr,* 168 Mo. 252, 67 S.W. 586 (1902) (holding that where a demurrer was sustained as to some of the defendants but no action was taken by or against the other defendants, an appeal from the order sustaining the demurrer

was premature as a judgment entry was not final so as to authorize an appeal, unless it made some disposition as to all of the parties to the record).

While Marsha Levison failed to respond to FCCU's Petition, "[a] trial court may [nevertheless] raise the issue of the sufficiency of a petition *sua sponte* because such defect is jurisdictional." *Kennedy v. Mo. Atty. Gen.,* 920 S.W.2d 619, 621 (Mo. App. W.D.1996); *see also Ford Motor Credit Co. v. Updegraff,* 218 S.W.3d 617, 620 (Mo.App. W.D.2007) ("The issue of whether a petition states a cause of action upon which relief can be granted is inherent in every appeal and may be raised *sua sponte* by both the trial and appellate courts."). A petitioner's failure to plead facts entitling the pleader to the relief requested, as required by Rule 55.05, deprives a trial court of the authority to rule on the petitioner's petition. *Updegraff,* 218 S.W.3d at 621. Here, the trial court specifically made such a finding:

> Plaintiff [FCCU] fails to plead sufficient facts showing that its notice was reasonable as required by § 400.9–611(b), and therefore Plaintiff has failed to meet the mandate of section § 408.556.1 RSMo.

Accordingly, the trial court held that it lacked authority to entertain FCCU's Petition.

Therefore, if the trial court lacked authority to hear the claim against Respondent due to insufficient facts, it follows that the trial court lacked authority to entertain the exact same claim, premised on the same facts and petition, as against Marsha Levison. Thus, FCCU's claim against Marsha Levison was disposed of by the trial court both: (1) explicitly, because a trial court can dismiss a petition *sua sponte* based upon jurisdictional defects (which the trial court did in its Order and Judgment, *supra,* by asserting that the claim against Marsha Levison was dis-

missed); and (2) implicitly, since the disposition of the claim against Marsha Levison logically follows the disposition of the claim against Respondent. *See Baumstark, supra.*

Accordingly, the trial court's judgment actually disposed of FCCU's claims against both Respondent and Marsha Levison.

### ii. FCCU's claims brought under its Petition and Respondent's Counterclaim are distinct "judicial units."

Second, Respondent asserts that the trial court's certification of its Order and Judgment as immediately appealable under Rule 74.01(b) was erroneous, defeating this Court's authority to hear this appeal, because Respondent's Counterclaim arises out of the same transactions and occurrences as FCCU's Petition. Respondent argues that the claims brought under both the Petition and Respondent's Counterclaim constitute one "judicial unit," both of which must be disposed of before there is an appealable judgment under Rule 74.01(b). *See e.g., Reynolds v. Briarwood Dev. Co., Inc.,* 662 S.W.2d 905, 906 (Mo. App. E.D.1983) ("if a counterclaim is pleaded and submitted, a finding must be made disposing of the counterclaim, or else, the judgment is not final and appealable.").

"Claims" are considered separate and appealable "if they require proof of different facts and the application of distinguishable law[.]" *Creel v. Union Elec. Co., Inc.,* 950 S.W.2d 315, 317 (Mo.App. W.D.

1997); *see also Lumbermens Mut. Cas. v. Thornton,* 36 S.W.3d 398, 402 (Mo.App. W.D.2000). Because the "claim" at issue is a counterclaim, analyzing whether Respondent's Counterclaim constitutes its own distinct "judicial unit" is best performed under the auspices of the law regarding compulsory and permissive counterclaims.

The "Compulsory Counterclaim Rule," Rule 55.32(a), compels a party to state any claim it has against its adversary which "arises out of the *transaction or occurrence* [5] that is the subject matter of the opposing party's claim[.]" *See* Rule 55.32(a) (emphasis added). "When a claim is compulsory, you use it or lose it." *Hemme v. Bharti,* 183 S.W.3d 593, 596 (Mo. banc 2006); *see also Wamsganz v. Washington Cnty. Mercantile Bank,* 783 S.W.2d 435, 437 (Mo.App. E.D.1989) ("Failure to assert a compulsory counterclaim forever bars claimant from having claim heard."). The compulsory counterclaim rule is an affirmative defense. *See generally Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528 (Mo. banc 2002). Conversely, a "permissive counterclaim" is any claim the party has against the opposing party which is unrelated to the opposing party's claim. *See* Rule 55.32(b).

If we were to hold Respondent's Counterclaim constitutes a compulsory counterclaim, then Respondent had an obligation to bring said claim at the risk of losing it.[6] Additionally, if this Court determines that Respondent's Counterclaim

---

5. We note that the definition of "judicial unit" and "compulsory counterclaim" utilize the same "transaction or occurrence" language. Thus, it follows that a compulsory counterclaim is part and parcel of the same judicial unit. *See Adamson v. Innovative Real Estate, Inc.,* 284 S.W.3d 721, 729 (Mo.App. S.D. 2009), quoting *Bankcard Sys., Inc. v. Miller/Overfelt, Inc.,* 219 F.3d 770, 773 (8th Cir. 2000) ("When the facts which would support

a defense to the original claim would also support a counterclaim, the two arise from the same transaction.").

6. "The purpose of the compulsory counterclaim rule is to promote judicial economy by requiring all *logically related claims be brought in a single proceeding."* *Hemme,* 183 S.W.3d at 598 (emphasis added).

was compulsory, then it must be disposed of by the trial court before this Court may entertain authority as it would fall under the same "transactions and occurrences" (or "judicial unit") as the claims sought under FCCU's Petition. In contrast, if this Court were to hold Respondent's Counterclaim as a permissive counterclaim, then a single "judicial unit" would have been disposed of by the trial court and this Court may entertain authority because it would comprise differing "transactions or occurrences."

 Here, while there is a common legal question involving both FCCU's Petition and Respondent's Counterclaim (specifically, the sufficiency of FCCU's Notice to Respondent) both the factual underpinnings of the claims and the application of the law are largely distinct, suggesting they are separate "claims." First, the central "transaction or occurrence" giving rise to FCCU's Petition is Respondent's breach of contract. In contrast, the central "transaction or occurrence" giving rise to Respondent's Counterclaim is purportedly "an unlawful and deceptive pattern of wrongdoing followed by FCCU with respect to the repossession of collateral." [7] Accordingly, the factual underpinnings and the laws sought to be applied are sufficiently distinct as to create distinct and appealable judicial units (contract law versus fraud/misrepresentation). Second, the contrast between the facts necessary to adjudicate FCCU's Petition and Respondent's Counterclaim are quite different.[8]

Furthermore, we find that Respondent's Counterclaim seeks an independent cause of action. Respondent is permitted to bring his class action for unlawful and deceptive practices against FCCU in a separate lawsuit. Thus, Respondent's Counterclaim is not one of compulsion, but rather a permissive counterclaim. *See e.g.,* *Sw. Bell Tel. Co. v. Buie,* 689 S.W.2d 848 (Mo.App. E.D.1985) (order dismissing three of five counts of counterclaim was final and appealable, because those counts, added by permissive counterclaim, were not dependent in any respect on the outcome or final disposition of the petition or remaining, compulsory counts of the counterclaim).

Therefore, finding Respondent's Counterclaim to be a distinct "judicial unit," the trial court did not err in certifying for appeal its *Order and Judgment* dismissing FCCU's Petition.

### iii. The trial court did not abuse its discretion in certifying its Order and Judgment as appealable under Rule 74.01(b).

 Finally, FCCU maintains that even if a distinct "judicial unit" was disposed of by the trial court, this Court should nevertheless refuse to entertain this appeal because the trial court abused its discretion in certifying its *Order and Judgment* as appealable under Rule 74.01(b).

 Under Rule 74.01, so long as at least one claim is fully resolved, the trial court has discretion to declare its judg-

---

7. The Counterclaim alleges that multiple defective notices in connection with the repossession and resale of collateral were sent to Zachary Levison and members of the putative class, and that FCCU practiced improper credit reporting.

8. At oral argument Respondent relies on *ABB, Inc. v. Securitas Security Services USA, Inc.,*

390 S.W.3d 196 (Mo.App. W.D.2012) to demonstrate that this court lacks authority. However, this Court finds *ABB, Inc.* inapposite because the counterclaim at issue in that case involved the same set of facts, transactions and occurrences as the dismissed claim. *Id.* 203–04, 2012 WL 5846997 at *6.

ment final upon a finding of "no just reason for delay." *Eyberg v. Shah,* 773 S.W.2d 887, 895 (Mo.App. S.D.1989); *see also Comm. for Educ. Equal. v. State,* 878 S.W.2d 446, 453 (Mo. banc 1994); *see also* Rule 74.01(b). The trial court, "in exercising this discretion, is granted broad latitude to act as a 'dispatcher' of the case." *Comm. for Educ. Equal.,* 878 S.W.2d at 453. An appellate court should not disturb the trial court's Rule 74.01 determination unless the trial court's conclusion was "clearly unreasonable." *Magna Bank of Madison Cnty. v. W.P. Foods, Inc.,* 926 S.W.2d 157, 161 (Mo.App. E.D.1996).

 A trial court abuses its discretion where the "circumstances of the case and the judgment entered are wholly inconsistent with a finding of 'no just cause for delay[.]' " *Comm. for Educ. Equal.,* 878 S.W.2d at 453. Generally, an appellate court will apply a four-factor test to determine whether the trial court's Rule 74.01(b) certification was proper:

1) whether the action remains pending in the trial court as to all parties;

2) whether similar relief can be awarded in each separate count;

3) whether determination of the claims pending in the trial court would moot the claim being appealed; and

4) whether the factual underpinnings of all the claims are intertwined.

*State ex rel. Bannister v. Goldman,* 265 S.W.3d 280, n. 1 (Mo.App. E.D.2008).

Here, the record before us does not support a finding that the court's ruling was clearly unreasonable as three of the four factors are met. First, the action does not remain pending in the trial court as to all parties as the claim against Marsha Levison was dismissed, and Marsha Levison did not join in Respondent's Counterclaim. Second, the trial court's determination of Respondent's Counter-

claim would not moot FCCU's claim being appealed. Third, as discussed, *supra,* the factual underpinnings of the Petition and Respondent's Counterclaim are not so intertwined as to hold that the trial court's Rule 74.01 certification was improper.

The only factor in favor of Respondent's allegation that the trial court abused its discretion is certifying its Order and Judgment as immediately appealable is factor number three (3), in that both claims seek monetary damages. While similar relief (monetary damages) may be awarded in both FCCU's Petition and Respondent's Counterclaim, we find that the other three factors balance in favor of the trial court's Rule 74.01(b) certification. Thus, we do not find the trial court's determination was clearly unreasonable or wholly inconsistent.

Therefore, finding that this Court has authority to entertain this appeal, we now proceed to the merits.

## III. DISCUSSION

FCCU raises two points on appeal. In its first point, FCCU alleges that the trial court erred in granting Respondent's Motion to Dismiss, in that the trial court improperly interpreted the presale notice requirements of Section 400.9–614. Second, FCCU claims the trial court erred in applying the "absolute bar" rule and dismissing FCCU's Petition. Because we find that the trial court erred in sustaining Respondent's Motion to Dismiss, we need not decide whether the trial court erred in applying the "absolute bar" rule to dismiss FCCU's Petition.

### *Standard of Review*

 This Court reviews a trial court's order granting a motion to dismiss *de novo. Fenlon v. Union Elec. Co.,* 266 S.W.3d 852, 854 (Mo.App. E.D.2008). When reviewing a motion to dismiss for

failure to state a claim upon which relief may be granted, we apply the following standard of review:

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or a cause that might be adopted in that case.

*State ex rel. Henley v. Bickel,* 285 S.W.3d 327, 329 (Mo. banc 2009) (quoting *Bosch v. St. Louis Healthcare Network,* 41 S.W.3d 462, 464 (Mo. banc 2001)).

### *Analysis*

 At issue in this case are the statutory-specific requirements regarding "pre-sale notice" a secured party must follow before selling repossessed collateral. *See* Sections 400.9–611—400.9–614. The importance of adhering to pre-sale notice requirements cannot be overstated because "[t]he right to a deficiency judgment accrues only when there is strict compliance with the statutory requirements." *States Res. Corp. v. Gregory,* 339 S.W.3d 591, 596 (Mo.App. S.D.2011) (quoting *Chrysler Capital Corp. v. Cotlar,* 762 S.W.2d 859, 861 (Mo.App. E.D.1989)). "Any doubt about what constitutes strict compliance is resolved in the debtor's favor." *Mancuso v. Long Beach Acceptance Corp.,* 254 S.W.3d 88, 92 (Mo.App. W.D. 2008). Thus, an improper notice defeats a secured creditor's right to pursue a deficiency judgment. *Gregory,* 339 S.W.3d at 596. Therefore, if a secured creditor fails to strictly comply with even one element of 400.9–614(1), the secured creditor's entitle-ment to pursue a deficiency judgment is destroyed. *Id.* at 597 ("a notification that lacks any of the information set forth in section 400.9–614(1) is insufficient as a matter of law."). It is the secured creditor's burden to prove compliance with the statutory requirements. *Cherry Manor, Inc. v. Am. Health Care, Inc.,* 797 S.W.2d 817, 821 (Mo.App. S.D.1990).

"Section 400.9–611(b) requires a secured party to provide the debtor with reasonable notice of its intent to sell the collateral." *Gregory,* 339 S.W.3d at 595. The content of the notice is dictated by Section 400.9–614. *Mancuso,* 254 S.W.3d at 91. Subsection (1) of that statute sets out what must be included in the notice:

(A) The information specified in section 400.9–613(1);

(B) A description of any liability for a deficiency of the person to which the notification is sent;

(C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9–623 is available; and

(D) A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available;

*See* Section 400.9–614(1). Section 400.9–614(1)(A), with reference to Section 400.9–613(1), requires the notification also:

(A) Describes the debtor and the secured party;

(B) Describes the collateral that is the subject of the intended disposition;

(C) States the method of intended disposition;

(D) States that the debtor is entitled to an accounting of the unpaid indebt-

edness and states the charge, if any, for an accounting; and

(E) States the time and place of a public disposition or the time after which any other disposition is to be made;

*See* Section 400.9–613(1).

While Section 400.9–614 does not require that the notice use any "particular phrasing[,]" the Section, nevertheless, sets forth a format, which, if used, "provides sufficient information" to satisfy Section 400.9–614(1). *See* Sections 400.9–614(2), 400.9–614(3). This format is referred to as the "Safe–Harbor" Form ("Safe Harbor Form"). *See* Section 400.9–614, cmt. 3.

Here, FCCU chose to disregard the optional but guaranteed sufficient Safe Harbor Form provided by Section 400.9–614(3). Instead, FCCU elected to create and use its own self-formulated notice ("Notice"). In so doing, the trial court found that the FCCU's Notice failed to meet the requirements of 400.9–614(1) in three respects: (1) FCCU failed to satisfy 400.9–614(1)(A), because it did not properly describe the debtor, in that Zachary Levison's co-debor, Marsha Levison, was purportedly not described as required by 400.9–613(1)(A)[9]; (2) the notice failed to specify which of the two telephone numbers included in the Notice would provide Respondent with information regarding the amount to be repaid to redeem the Vehicle, pursuant to 400.9–614(1)(C); and (3) regardless of the two telephone numbers and the mailing address included in the Notice, the Notice, nevertheless, failed to meet 400.9–614(1)(D) because the Notice did not inform Respondent that those telephone numbers and the mailing address may be used to discover additional information regarding the disposition of the Vehicle or obligation due.

FCCU claims the Notice, while not mimicking the Safe Harbor Form, complied with Section 400.9–614(1), and, thus, the trial court erred in granting Respondent's Motion to Dismiss.

■■■■ This Court, in determining whether a secured creditor has met the notice requirements under Section 400.9–614(1) is guided, not by the optional Safe Harbor Form, but by the principles of statutory interpretation. *See e.g.*, Section 400.9–614, cmt. 3 ("Finally, if a notification is in a form other than the paragraph (3) safe-harbor form, other law determines the effect of including the notification information other than that required by paragraph (1)."). The purpose of statutory construction is to determine the legislature's intent in enacting the statute and to give effect to that intent, as expressed in the words of the statute. *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909–10 (Mo. banc 2006); *see also State v. Wilson*, 55 S.W.3d 851, 856 (Mo.App. W.D.2001) ("Our interpretation of the relevant provisions of the statute must be derived from the plain and ordinary language of the statute."). "If the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 161 (Mo.App. W.D.2006). The purpose of the UCC Section 9's notice requirement is to "apprise the debtor of the details of the disposition so that the debtor may take appropriate action to protect his or her interest." *Thong v. My River Home Har-*

9. Rather, Appellant mailed a separate but identical (albeit, replacing "Zachary" for "Marsha") notice to Marsha. Marsha's notice, similarly, did not describe her co-debtor (i.e., Zachary).

*bour, Inc.,* 3 S.W.3d 373, 377 (Mo.App. E.D.1999).

A thorough discussion of the elements of Section 400.9–614(1) demonstrates that FCCU's Notice was sufficient.

**1. Section 400.9–614(1)(A): The information specified in section 400.9–613(1).**

The first element of Section 400.9–614(1) requires that the pre-sale notice include the information prescribed by Section 400.9–613(1).

*(A) The Notice describes the debtor and the secured party pursuant to 400.9–613(1)(A).*

 In the Notice sent to Respondent, FCCU included only the name of Zachary Levison. No where in the Notice did FCCU mention Respondent's co-debtor, Marsha Levison, nor did the Notice inform Respondent that a notice was sent to Marsha Levison. However, as stated previously, FCCU simultaneously mailed an identical notice to Marsha Levison. *See supra,* n. 9.

At issue is whether FCCU satisfied describing the "debtor" by only listing Zachary Levison on the Notice and excluding co-debtor, Marsha Levison, as envisioned in the Safe Harbor Form. *See* Section 400.9–614(3).

Respondent argues that FCCU was required to include both debtors because throughout the UCC, as adopted by the Missouri Legislature, "words in the singular number include the plural . . ." unless the context requires otherwise. *See* Section 400.1–102(5)(a).

The parties cite no Missouri case, and independent research has disclosed none, which discusses the requirement of describing the debtor under Section 400.9–613(1)(A) and 400.9–614(1)(A). This question seems to be one of first impression, not only for Missouri, but for other jurisdictions as well.

While the Missouri Uniform Commercial Code provides that words importing the singular number may be extended to the plural in proper circumstances, it is also just as clear that this ought not to be done when it would have the effect to destroy or change a statute, the language of which is plain, or where its application violates reason and nullifies the intent of the Missouri Legislature. *See Sharp v. Producers' Produce Co.,* 226 Mo.App. 189, 47 S.W.2d 242, 244 (1932) ("In construing a statute the legislative intent must be kept in mind"); *see also Bowers v. Mo. Mut. Ass'n,* 333 Mo. 492, 62 S.W.2d 1058, 1063 (1933) ("Laws are passed in a spirit of justice and for the public welfare and should be so interpreted if possible as to further those ends and avoid giving them an unreasonable effect. . . . In arriving at the legislative intent, doubtful words of a statute may be enlarged or restricted in their meaning to conform to the intent of the lawmakers, when manifested by the aid of sound principles of interpretation."). In fact, the Missouri Uniform Commercial Code explicitly states that the sections of Chapter 400 are to be "applied to promote its underlying purposes and policies." *See* Section 400.1–102(1); *see also* Section 400.1–102, cmt. 1 ("The Act should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question").

 The intent of Section 400.9–614 is to "apprise" the debtor receiving the notice of the details of the disposition so that the debtor may take appropriate action; the statute's intent is not to inform one debtor of a description of a co-debtor or that the said co-debtor received a notice as

well. While the better practice might be to provide such information in all notices (hence, the inclusion of such language in the Safe Harbor Form), the intent of the statute is met as long as each co-debtor receives sufficient notice of the disposition and obligation due. To hold otherwise would lead to a result that would not further the legislative intent of the statute. Accordingly, we hold that the word "debtor," as used in Section 400.9–613(1)(A) and as incorporated by reference by Section 400.9–614(1)(A), is used in its distributive sense, meaning the debtor receiving the notice must be described. In this context, no one is mislead or harmed by a secured party's failure to describe a co-debtor.

■ Here, both Levisons were informed of the pending disposition of their Vehicle. Respondent's Notice sufficiently described the debtor so as to inform Respondent that his collateral was repossessed and disposition was intended. Neither the plain language nor the intent of Section 400.9–614(1) imposes a duty on a secured party to inform one co-debtor that another co-debtor has also received notice of the intended disposition of the collateral. The first prong of 400.9–614(1)(A) is met.

**(B) The Notice describes the collateral that is subject of the intended disposition pursuant to 400.9–613(1)(B).**

■ Close to the top of the Notice, under the heading "**Collateral Description,**" FCCU describes the collateral as a "2008 DODGE CHARGER" and then proceeds to list the Vehicle Identification Number (VIN). This sufficiently describes the collateral for purposes of

400.9–613(1)(B). The second prong of 400.9–614(1)(A) is met.

**(C) The Notice states the method of intended disposition pursuant to 400.9–613(1)(C).**

■ In the first paragraph of the Notice, FCCU states:

You are hereby notified that First Community Credit Union has taken possession of the above described collateral due to default in the payment of the amount secured by said collateral and hereby notifies you that it intends to sell or dispose of said collateral unless you redeem same by paying the payoff balance and repossession costs. Disposition will be **by private sale after ten (10) days from the date of this letter.** (emphasis added).

The Notice is unambiguous in its language that a disposition of private sale will occur.[10] The third prong of 400.9–614(1)(A) is met.

**(D) The Notice states that the debtor is entitled to an accounting of the unpaid indebtedness pursuant to 400.9–613(1)(D).**

■ Again, the unambiguous language of the Notice informs the debtor that he is "entitled to an accounting of the exact amount of your indebtedness."[11] The fourth prong of 400.90–614(1)(A) is met.

**(E) The Notice states the time after which the private disposition is to be made pursuant to 400.9–613(1)(E).**

■ Corresponding to the third prong of 400.9–614(1)(A), the Notice informs the debtor that private disposition will be made "ten (10) days from the date of this

---

10. The language is synonymous with the language envisioned in the Safe Harbor Form: "We will sell (*describe collateral*) at private sale sometime after (*date*)." *See* Section 400.9–614(3).

11. This language tracks with the Safe Harbor Form: "If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us...." *Id.*

letter."[12] The fifth and final prong of 400.9–614(1)(A) is met.

2. **Section 400.9–614(1)(B): A description of any liability for a deficiency of the person to which the notification is sent.**

The Notice adequately explains that the debtor is responsible for any deficiency after disposition:

> In the event that disposition or sale of the collateral brings less than the payoff balance plus costs allowed by the contract, you will be responsible for any deficiency.... If the collateral sells for more than the payoff balance plus repossession costs, you are entitled to the surplus.

Not only does this sufficiently meet the requirements of 400.9–614(1)(B), but it tracks the Safe Harbor Form as well. *See* Section 400.9–614(3).[13]

3. **Section 400.9–614(1)(C): A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9–623 is available.**

The Notice states the debtor may redeem the collateral "by paying the payoff balance and repossession costs." The Notice included two different telephone numbers: (1) a number in the secured party's letterhead at the top of the Notice; and (2) a number listed, with an extension, for the "Repossessed Auto Specialist" located at the bottom of the Notice. Further, at the top of the Notice, the secured party informs Respondent that the "Amount Due (Payoff)" is $26,025.53. Under the heading "**Repossession Costs,**" the Notice directs the debtor to "Call Lienholder."

FCCU argues that the Notice meets Section 400.9–614(1)(C)'s requirement of providing a telephone number because the Notice included two telephone numbers and the exact amount due for payoff. Conversely, Respondent claims that, regardless of the two numbers, the Notice fails to inform the debtor that he may call either of the numbers to inquire about the payoff amount due.[14] The trial court, agreeing with Respondent, held: "Although the notice contains two phones numbers, its fails to inform Defendant [Zachary Levison] that either of those numbers could be used to learn the exact amount he must pay to redeem the collateral." We disagree with the trial court's interpretation of Section 400.9–614(1)(C).

First, while the Safe Harbor Form provides sufficient information, a "particular phrasing of the notification is not required." *See* Section 400.9–614(2). Accordingly, the plain and unambiguous language of the statute does not require that a notice state with such specificity, as found in the Safe Harbor Form, that the debtor can use a certain telephone number to ascertain the payoff amount. Rather, Section 400.9–614(1)(C) only requires that a telephone number be provided to the debtor in order to determine the payoff amount. Here, Respondent failed to offer any evidence that the two numbers listed on the Notice, if called, would not have

---

**12.** This too conforms with the Safe Harbor Form. *See supra,* n. 10.

**13.** "The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you (*will or will not, as applicable*) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else." *See* Section 400.9–614(3).

**14.** The Safe Harbor Form reads: "To learn the exact amount you must pay, call us at (*telephone number*)."

been able to provide him with the exact payoff amount.

Second, the Notice specifically instructs the debtor to "Call Lienholder." Assuming, *arguendo*, that a debtor did not understand the definition of a "lienholder,"—thus unsure as to whom to call—any reasonable debtor, after having his or her collateral repossessed, and then subsequently receiving notice of anticipated disposition of that collateral, would have called one of the two telephone numbers, if not both telephone numbers. To require a notice to specifically track the language of the Safe Harbor Form, as ostensibly requested by Respondent, is against the principles of statutory interpretation and the plain and unambiguous language of Section 400.9–614(1)(C).

While the Notice failed to track the Safe Harbor Form, the Notice, nevertheless, meets the requirement of Section 400.9–614(1)(C).

**4. Section 400.9–614(1)(D): A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.**

As noted above, the Notice includes two telephone numbers. Additionally, at the top of the Notice, the secured party includes its mailing address.

The trial court found that this information was insufficient to meet the requirements of Section 400.9–614(1)(D): "Although Plaintiff's notice has two different telephone numbers and its address, the notice fails to inform Defendant that this contact information could be used to learn additional information concerning the disposition of the collateral and obligation secured."

 However, the plain and unambiguous language of Section 400.9–614(1)(D) does not require such a phrasing. Rather, the statute only requires that a notice provide such contact information. It is the Safe Harbor Form that envisions the phrasing suggested by the trial court's holding and the Respondent's argument.[15] This Court is constrained by the language of Section 400.9–614(1)(D) when construing it and may not find a meaning that is not supported by the language of the statute. The plain and ordinary meaning of the statute does not demand that a notice inform the debtor that they may use the secured creditor's contact information to acquire additional information regarding the disposition and obligation; the statute's plain language only requires such contact information is included in the notice.

Again, while the Notice failed to track with the Safe Harbor Form, the Notice, nevertheless, meets the requirement of Section 400.9–614(1)(D).

While this Court finds FCCU's Notice sufficient for purposes of meeting the requirements of Section 400.9–614, we note that parties who fail to use the Safe Harbor Form do so at their peril.

## IV. CONCLUSION

The judgment of the trial court sustaining Respondent's Motion to Dismiss is reversed and the cause remanded with instructions to reinstate FCCU's Petition and for further proceedings consistent with this opinion.

ROBERT G. DOWD, JR. P.J., and ANGELA T. QUIGLESS, J., concur.

---

15. "If you need more information about the sale call use at (*telephone number*) (or write us at (*secured party's address*))." *See* Section 400.9–614(3).